IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WATERLOO SPARKLING WATER CORP., | § | Civil Action No. 1:21-CV-161-RP |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| TREATY OAK BREWING AND | § | |
| DISTILLING CO., LLC, TREATY OAK | § | |
| BRANDS, LLC, TREATY OAK | § | |
| OPERATIONS, LLC, TREATY OAK | § | |
| HOLDINGS, LLC, SPIRITED COCKTAILS | § | |
| CORPORATION, DANIEL BARNES, and | § | |
| BRANDON CASON, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DECLARATION OF JEFFREY M. THEODORE IN SUPPORT OF
PLAINTIFF'S OPPOSED MOTION FOR PRELIMINARY INJUNCTION**

I, Jeffrey M. Theodore, declare:

1.      I am a partner in BraunHagey & Borden LLP, counsel of record to Plaintiff Waterloo Sparkling Water Corp. ("Waterloo").  I make this declaration based on personal knowledge. If called upon to testify, I could and would testify competently thereto.

2.      On February 12, 2021, my partner J. Noah Hagey sent a cease and desist letter to Defendants in this matter requesting that they cease and desist from introducing their infringing WATERLOO NO. 9 GIN SPRITZ product into the marketplace.  A true and correct copy is attached as **Exhibit 1**.

3.      Three days later, on February 15, 2021, an article and interview with Defendant Cason appeared in *Forbes* in which he previewed the launch of the WATERLOO NO. 9 GIN SPRITZ, touted his claim to be a co-founder of Waterloo, suggested that Defendants' seltzer products were affiliated with Waterloo, and claimed to be "mix[ing] Waterloo" with spirits.  A true and correct copy is attached as **Exhibit 2**. On February 17, 2021, Mr. Hagey sent a letter to *Forbes* requesting that the misrepresentations in this article be corrected, and *Forbes* subsequently revised the article.

4.      On February 17, 2021, Waterloo filed this suit, seeking to enjoin Defendants from infringing its WATERLOO SPARKLING WATER® design mark, its common law rights in the word WATERLOO and its distinctive trade dress, and bringing additional claims.

5.      Following the filing of the Complaint, Waterloo sought to avoid the need for a preliminary injunction motion by seeking agreement from Defendants that they would withdraw the offending product and not further infringe during the pendency of this litigation.

6.      Waterloo has been able to obtain agreement from Defendants Spirited Cocktails Corp. and Brandon Cason that they will not further infringe, and a stipulated injunction and consent order has been filed to that effect.

7.      Unfortunately, despite Waterloo's best efforts, it has not been able to reach a similar agreement with Defendants Treaty Oak Brewing and Distilling Co., LLC, Treaty Oak

Brands, LLC, Treaty Oak Operations, LLC, and Treaty Oak Holdings, LLC, (collectively, "Treaty Oak") and Daniel Barnes.

8.      On February 19, 2021, I spoke to counsel for Treaty Oak.  He represented that Treaty Oak would not proceed with the WATERLOO NO. 9 GIN SPRITZ nor take any further steps to produce or market an alcoholic seltzer beverage until this matter is resolved.  That agreement is memorialized in an email I sent to counsel for Treaty Oak the same day, a true and correct copy of which is attached hereto as **Exhibit 3**.

9.      Counsel for Treaty Oak did not dispute my characterization, stating that such a product was "not something that is in production" but noting that, in any ultimate settlement agreement, Treaty Oak would seek to preserve its rights. A true and correct copy of that email is attached hereto as **Exhibit 4**.

10.     On February 24, 2021, I again spoke to counsel for Treaty Oak.  He again confirmed that Treaty Oak did not plan to launch a hard seltzer, spritz, or other can-based product until this dispute was resolved.  I again memorialized that agreement in an email I sent to counsel for Treaty Oak the same day, a true and correct copy of which is attached hereto as **Exhibit 5**.

11.     Subsequent to those discussions, however, Treaty Oak backed away from its commitment not to launch a WATERLOO-branded alcoholic seltzer during the pendency of this dispute and has since refused to confirm whether or not it is planning any such product.  On March 15, 2021, I sent a proposed preliminary injunction to counsel for Treaty Oak, which would have protected Waterloo against misuse of trademarks and trade dress during the pendency of this litigation.  A true and correct copy of that email is attached hereto as **Exhibit 6**.

12.     Receiving no response, counsel for Waterloo followed up on March 22, 2021.  A true and correct copy of that email is attached hereto as **Exhibit 7**.

13.     In response, counsel for Treaty Oak proposed an injunction that would bar it only from using the exact packaging and trade dress that it had previously intended to introduce but

otherwise giving it free rein to introduce a Waterloo-branded alcoholic seltzer.  A true and correct copy of that email is attached hereto as **Exhibit 8**.

14.     In an attempt to avoid burdening the Court with preliminary injunction briefing, Waterloo then proposed on March 29, 2021, that Treaty Oak agree to provide 120 days' advance notice before proceeding with any alcoholic seltzer product that uses the Waterloo name during the pendency of this litigation.  Counsel for Waterloo explained that Treaty Oak's proposal was "not consistent with the representations" that it had made "in response to [Waterloo's] filing suit and on the basis of which [Waterloo] refrained from seeking injunctive relief" and directed counsel for Treaty Oak to the emails memorializing those discussions.  Counsel for Waterloo also explained that Treaty Oak's proposal did not protect it against the introduction of an only slightly revised infringing product without notice.  To protect itself against that eventuality while avoiding requiring Treaty Oak to give up any of its claimed rights and attempting to avoid burdening the Court with preliminary injunction briefing at this juncture, Waterloo proposed a compromise under which Treaty Oak would provide advance notice before using WATERLOO on an alcoholic seltzer.  A true and correct copy of that email is attached hereto as **Exhibit 9**.

15.     Counsel for Treaty Oak responded: "Your email is - how shall we say it -- detached from reality."  A true and correct copy of that email is attached hereto as **Exhibit 10**.

16.     On April 7, 2021, counsel for Treaty Oak responded with a revised proposed preliminary injunction that removed the proposed notice period.  Counsel for Treaty Oak did not provide any explanation for its refusal to agree to provide notice.  A true and correct copy of that email is attached hereto as **Exhibit 11**.

17.     On April 9, 2021, I called counsel for Treaty Oak in an effort to discuss the matter, left a voice message, and sent a follow-up email, a true and correct copy of which is attached hereto as **Exhibit 12**.

18.     On April 12, 2021, I again called counsel for Treaty Oak in an effort to discuss the matter but was again unable to reach him.  I then sent a revised proposed stipulated

3

injunction reducing the notice period to ninety days.  A true and correct copy of that email is attached hereto as **Exhibit 13**.

19.     On April 13, 2021, I spoke to counsel for Treaty Oak and urged them to agree to the proposed notice period as a compromise that would protect both Parties' rights while avoiding the need for a preliminary injunction. Counsel for Treaty Oak declined to tell me whether a WATERLOO-branded alcohol seltzer was in the offing but agreed to discuss the notice period with their clients.  I memorialized and followed up on that conversation in an email the next day, a true and correct copy of which is attached hereto as **Exhibit 14**.

20.     On April 16, 2021, I called counsel for Treaty Oak to follow up on the matter but was unable to reach him.  A true and correct copy of my follow-up email asking "to see where we were on another turn of the PI and see if I could talk briefly offline to see if we can move this forward" is attached hereto as **Exhibit 15**.

21.     Counsel for Treaty Oak responded that "Our client representatives are considering the proposal and discussing a couple different options.  We are working on it."  A true and correct copy of that email is attached hereto as **Exhibit 16**.

22.     On April 19, 2021, I again wrote counsel for Treaty Oak asking him to "let me know where we are on the PI."  A true and correct copy of that email is attached hereto as **Exhibit 17**.

23.     On April 22, 2021, I again emailed counsel for Treaty Oak "to follow up on our efforts to negotiate a stipulated preliminary injunction" and noted that "we sent you our latest draft ten days ago, spoke on the phone about it the day after that, and have sent you three follow up emails since then but have not received any substantive response other than that you are considering our proposal."  I requested that Treaty Oak respond so that the Parties could "reach an agreement, if there is one to be reached, no later than Tuesday[, April 27, 2021]."  A true and correct copy of that email is attached hereto as **Exhibit 18**.

4

24.     On April 23, 2021, counsel for Treaty sent a revised preliminary injunction that omitted the notice provision while representing that "our client management team is still considering that concept and may be willing to agree to something like that."  A true and correct copy of that email is attached hereto as **Exhibit 19**.

25.     That afternoon, I again called counsel for Treaty Oak in an effort to follow up on the matter but was unable to reach him.

26.     On Sunday April 25, 2021, I again wrote to counsel for Treaty Oak, offered "to speak with you on Monday," and asked "Please let us know whether Treaty Oak and Barnes will agree to the 90-day notice provision."  A true and correct copy of that email is attached hereto as **Exhibit 20**.

27.     On April 26, 2021, I spoke with counsel for Treaty Oak by phone, explained the compromise purpose of our notice proposal, and urged him to get back to me promptly regarding whether his client would accept it.

28.     On April 30, 2021, counsel for Treaty Oak responded by stating that his client would agree to provide ninety days' notice of any WATERLOO-branded seltzer product launched over the next six months in return for final dismissal and release of all claims.  A true and correct copy of that email is attached hereto as **Exhibit 21**.

29.     I responded the same day to explain the mismatch between the interim relief of notice during a six-month period and the permanent dismissal of our claims.  A true and correct copy of that email is attached hereto as **Exhibit 22**.  Counsel for Treaty Oak responded by agreeing to an expansion of the page limit for this motion but did not make any further response regarding the substance.  A true and correct copy of that email is attached hereto as **Exhibit 23**.

30.     Accordingly, Waterloo is filing the accompanying motion.

31.     Attached hereto as **Exhibit 24** is a true and correct copy of excerpts from a marketing presentation describing the promotional campaign for and intended market rollout of the infringing Waterloo No. 9 Gin Spritz.

32.     Treaty Oak is a distiller that, according to archival images of its website, appears only to have sold spirits and never to have sold a canned or sparkling beverage product. Examples of such images are attached as **Exhibit 25**.

33.     Treaty Oak has a trademark registration for "WATERLOO NO. 9 GIN" for "spirits" in International Trademark Class 33. Attached hereto as **Exhibit 26** is a true and correct copy of the United States Patent and Trademark Office Registration Certificate of "Waterloo No. 9 Gin" Registration No. 6003279, describing the mark as "Spirits."

34.     Treaty Oak does not appear to have made any sales outside Texas as of July 2018. Attached as **Exhibit 27** is a true and correct copy of a press release from Treaty Oak dated July 5, 2018. The press release states that, as of July 2018, Treaty Oak's gins were "available […] at both on- and off-premise establishments in Texas" and that "[l]ater this year, the gins will roll out to seven additional U.S. markets." Attached as **Exhibit 28** is a true and correct copy of a press release from Treaty Oak and its partner Mahalo Spirits Group, dated July 12, 2018. The press release states: "Until now, the company's portfolio of spirits has been one of the best kept secrets in Texas. With [Mahalo Spirits Group's] help, the upstart brand will expand its U.S. footprint into seven new markets . . . and quickly rollout nationally."

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated:  May 3, 2021                                    By:     /s/ *Jeffrey M. Theodore*
                                                                          Jeffrey M. Theodore

# EXHIBIT 1

# B R A U N **HAGEY** & B O R D E N LLP

San Francisco & New York

**J. Noah Hagey, Esq.**
Managing Partner
hagey@braunhagey.com

February 12, 2021

**VIA EMAIL**

Daniel Barnes
CEO
Treaty Oak Distilling
16604 Fitzhugh Rd
Dripping Springs, TX 78620
Email: daniel@treatyoakdistilling.com

> **Re:    Cease and Desist re. Planned Infringement of WATERLOO SPARKLING
> WATER® Trademark**

Dear Mr. Barnes:

We are litigation counsel to Waterloo Sparkling Water Corp. ("Waterloo"), proprietors of the popular and extremely successful WATERLOO SPARKLING WATER® brand and trademark (the "WATERLOO Mark").  We write to address Treaty Oak Distilling's intentional effort to mimic the trademark, trade dress and branding of Waterloo's products in order to sell confusingly similar hard seltzer drinks under the "Waterloo No. 9 Gin Spritz" brand (the "Infringing Product") represented as follows:



| **Waterloo Product** | **Infringing Product** |
|---|---|

Because of the obvious and willful similarity of the Infringing Product to Waterloo's established products, our client already has received outreach from retail partners expressing confusion and surprise over the Infringing Product's prospective launch.  Further, your actions not only directly infringe Waterloo's intellectual property, but also will put consumers and children directly at risk when they accidentally drink an Infringing Product with alcohol.  *See* 27

**San Francisco**
351 California St., 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**
7 Times Square, 27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

February 12, 2021
Page 2

CFR §5.34(a) (prohibited misleading brand practices in advertising or selling alcoholic beverages).

Your actions also give rise to concerns arising from your direct ownership in Waterloo, through which you have received confidential and non-public information regarding the company's plans, branding and success. The misuse of that information gives rise to concerns regarding Treaty Oak's intended effort to capitalize on Waterloo's popular and well-known brand and market relationships. Waterloo reserves the right to redress any misuse of its confidential information, including as related to your stock ownership and proceeds from sale.

For these and other reasons which follow, please be advised that Waterloo intends to bring an immediate action to protect its intellectual property should Treaty Oak and its agents and affiliates, including without limitation Spirited Cocktails and/or CANTEEN Spirits, fail to promptly confirm they will cease and desist all infringing conduct.

### A.    Waterloo's Distinctive Trademark and Trade Dress

Because of your prior (and current) relationship with Waterloo, you are familiar with Waterloo's broad success.

Waterloo's sparkling water is one of the most popular and successful sparkling water brands in the United States. Waterloo has grown into a beloved national brand. Its products are sold in every state and in over 13,000 retailers nationwide. Waterloo's design trademark, distinctive trade dress, and fanciful, appealing design have been central to its success and popularity along with the widespread recognition of its branding in the marketplace. Waterloo's refreshing beverages are especially popular with teenagers, young adults, and families with children.

Waterloo is the priority owner of a federal registration for its WATERLOO SPARKLING WATER® design and trademark (U.S. Reg. No. 5356607), represented on its multiple cans of sparkling water sold all across the United States:



This WATERLOO Mark was issued in 2017 and obtained long before Treaty Oak ever received registration for its purported Waterloo No. 9 Gin mark.

February 12, 2021
Page 3

Waterloo has invested millions of dollars and years of effort to market, advertise, and grow its brand and consumer goodwill. Waterloo's can is prominently featured in nationwide advertising campaigns, including on Facebook, Instagram, Twitter, YouTube, and other social media. Its co-founders and products have been featured in news broadcasts touting its flavor, healthfulness, and hometown Austin pride. As a result of its success in these efforts, Waterloo is an exceptionally popular and ubiquitous national brand with highly distinctive trademarks and trade dress.

### B.  Treaty Oak's Copying of Waterloo's Trademark and Trade Dress

Your existing gin product has a distinctive trade dress and equally emphasizes "WATERLOO," "NO. 9", and "GIN". Your trademark for the "WATERLOO NO. 9 GIN" was obtained in March 2020, almost three years after Waterloo's mark registered in December 2017. Further, your mark expressly limits its product to spirits, and includes a specimen that reflects the following brand characteristics:



Your new Infringing Product, however, aims to copy Waterloo's distinctive and protected mark and dress and mimics the color and flavor profiles of multiple Waterloo SKUs:

| Waterloo Products | Infringing Products |
|---|---|
|  |  |

February 12, 2021
Page 4



These images clearly establish that the Infringing Product attempts to ride Waterloo's coattails by mimicking almost every aspect of Waterloo's protected brand, including:

- Large, brightly colored "WATERLOO" appearing in a serif, fanciful font.

- Prominent ornamental banner with waving and curling ends.

- Curving lines and tendrils.

- Placement of a bold, all-caps flavor label centered on the bottom portion of the can.

- Same calorie and sugar claims in light colors on the upper lip of the can.

The Infringing Product also abandons your actual trademark registration, which is limited to the entire, coherent name "WATERLOO NO. 9 GIN". In the images above, the product is called "Gin Spritz" but only the name "WATERLOO" appears is emphasized and completely disassociated from "No. 9".

February 12, 2021
Page 5

### C.   The Infringing Product Will Confuse and Harm Consumers

They say imitation is the sincerest form of flattery, and in that sense Treaty Oak's copying of the WATERLOO Mark and trade dress is awfully flattering.  But the good feelings stop when consumers are misled and put at risk by Treaty Oak's infringing goods.  The Infringing Product packaging creates an unacceptable risk that consumers will be confused into mixing up your alcoholic seltzer with Waterloo's sparkling water.  This is particularly true because Waterloo is a nationally known brand, while consumers have never heard of an alcoholic seltzer product from your company.

For children, pregnant women, consumers with medical conditions, drivers, and others who abstain from alcohol, the consequences of a mix-up could be disastrous and even fatal – particularly where, as here, you are distributing and selling confusingly similar products without the oversight and control of Waterloo's management.

Thankfully, laws exist to protect consumers, including alcoholic beverage licensing and labeling laws which preclude misleading brand names:

> Misleading brand names. No label shall contain any brand name, which, standing alone, or in association with other printed or graphic matter, creates any impression or inference as to the age, origin, identity, or other characteristics of the product unless the appropriate TTB officer finds that such brand name (when appropriately qualified if required) conveys no erroneous impressions as to the age, origin, identity, or other characteristics of the product.

27 CFR §5.34(a).

While Waterloo would prefer to work this out between neighbors, it cannot tolerate dangerous infringing products targeted at its customers.  If pressed into court, Treaty Oak's copying of Waterloo's trade dress will give rise to liability for trademark and trade dress infringement and unfair competition.  *See Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1122 (5th Cir. 1991), *aff'd*, 505 U.S. 763 (1992); *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).  Treaty Oak's willful infringement (and misuse of private information regarding Waterloo) also expose Treaty Oak to enhanced penalties include treble damages and attorneys' fees.  15 U.S.C. § 1117.

Last, but not least, your conduct also exposes you to potential personal liability and shareholder remedies related to your potential misuse of Waterloo's confidential and non-public corporate information in connection with the planned launch of the Infringing Product.

Please confirm by no later than close of business on Wednesday, **February 17, 2021** that Treaty Oak will immediately comply with each of the following:

February 12, 2021
Page 6

   (1) Cease any production or manufacture of any Infringing Product or its labels.

   (2) Not sell, offer to sell, advertise or otherwise distribute any Infringing Product.

   (3) Identify the location and quantity of all Infringing Product finished goods and packaging.

   (4) Contact each of Treaty Oak's suppliers, co-manufacturers and distributors to advise them regarding the issues set forth in this letter and to demand that they preserve and not destroy any document or thing relating to the creation, marketing, or sale of the Infringing Product.

   (5) Provide our office with the name and contact information of any distributor and retailer to whom you have pitched the Infringing Product.

  Additionally, please confirm that Treaty Oak, its agents and its affiliates (including distributors and branding agents) will promptly institute a document preservation and litigation hold on all documents, things, and electronically stored information related to the infringing products or this dispute, including but not limited to information on your personal or business email, cell phones, chat applications, cloud storage devices and other repositories.

  All rights, claims, *etc.* reserved.

     Very truly yours,

     J. Noah Hagey

Cc: Brandon Cason, Spirited Cocktails / CANTEEN Spirits
   (via Email, brandon@drinkcanteen.com)

# EXHIBIT 2

Feb 15, 2021, 05:53pm EST | 2,844 views

# How CANTEEN Spirits CEO Brandon Cason Is Shaking Up The Ready-To-Drink Cocktail Game



**Chelsea Davis** Contributor ⓘ ⊕

Dining

*I cover food, drink & travel—in other words, all the fun stuff!*



CANTEEN Vodka Soda    KARIN SAMELSON

We all know about White Claw, Truly and other hard seltzer brands that have flooded liquor store shelves these past few years. But if you're looking for a real liquor-based seltzer, CANTEEN is what you need. This vodka-based ready-to-drink beverage is 99 calories, sodium free, non-gmo, and gluten free since it uses a corn-based vodka that is distilled and filtered. Moreover, it doesn't have a wierd after taste that is common with seltzers that are "sweetened" with sugar alcohol.

"The main difference you'll find in CANTEEN is that we use a real vodka base alcohol vs. a malt or fermented white sugar alcohol which has a noticeable after-taste and bitterness," says Brandon Cason, CEO of CANTEEN.

"One of the most important features of the brand is that we have zero sugar and no carbs. There are plenty of brands in the category that are full of sugar and carbs which make them hard to enjoy and much less sessionable. CANTEEN is not filling and is light and refreshing and can be enjoyed on the go or at home."



In 2010, Cason joined Deep Eddy Vodka as one of the brands' first employees an in just six years as VP of Marketing, he helped to increase sales to 2.5 million cases annually and successfully led Deep Eddy to become one of the fastest growing spirits brand in the US.

Brandon Cason, CEO of CANTEEN

CANTEEN

MORE FOR YOU

**23 San Francisco Bay Area Valentine's Day Specials For You And Yours**

**How To Plan A Virtual Mardi Gras Celebration**

**Krispy Rice Teams Up With Tinder For National Flirting Week**

---

Seven years later in 2017, Cason co-founded Waterloo Sparkling Water, a zero-calorie sparkling water brand available in numerous innovative flavor varietals, and sold 100 million cans during first year in market.

Fast forward to today, and this brand is on a mission to offer a breakthrough, better-for-you alternative to other malt liquor seltzers; blending real vodka and all-natural ingredients to create an adventure-ready canned cocktail.

Let's see what's in store for CANTEEN.

We chatted with Brandon Cason, CEO of CANTEEN, on how CANTEEN came about, competition, his previous experience with major brands Deep Eddy and Waterloo and more. Here's what he had to say.

### How did the idea of CANTEEN come about?

My partner and I had been mixing up vodka soda drinks at home for years. I was head of marketing at Deep Eddy Vodka for seven years and so vodka was the go-to libation around my house. I left my post there to cofound Waterloo Sparkling Water back in early 2017 and from that point on, it was a no-brainer to mix Waterloo with Deep Eddy Vodka.



CANTEEN Vodka Soda    MATTHEW NADU

About that same time, the seltzer craze was taking hold of America and we started watching the alcohol trends completely shift. Daniel Barnes and I recognized that there wasn't a real option for consumers who wanted a 'spirit-based' seltzer that also delivered a refreshing experience and contained no sugar or carbs.

We also knew that the wine and spirits wholesaler network was being threatened by the new popularity of hard seltzers and that they'd be looking to fight with something that fit their portfolio and also made sense for consumers who wanted a premium trade-up to malt-based seltzers. That's when CANTEEN was born.

## What separates CANTEEN from other ready-to-drink seltzers and alcoholic canned drinks?

The main difference you'll find in CANTEEN is that we use a real VODKA base alcohol vs. a malt or fermented white sugar alcohol which has a noticeable after-taste and

bitterness. One of the most important features of the brand is that we have



CANTEEN Vodka Soda   JESSICA OLMSTEAD

ZERO sugar and NO carbs. There are plenty of brands in the category that are full of sugar and carbs which make them hard to enjoy and much less sessionable. CANTEEN is not filling and is light and refreshing and can be enjoyed on the go or at home.

## How has your background and experience with Deep Eddy and Waterloo set you up for success with this venture?

My previous brands we're really the catalyst for where I have ended up in my career without a doubt. Essentially it's the union of two liquids into one. No matter what brand I've been a part of, it's always been mission critical that we have a huge focus on quality ingredients and product.

At Deep Eddy we were the first to use real fruit juice in our flavored vodkas. At the time that was unique and set us apart from the rest of the flavored vodka madness. At Waterloo Sparkling we had an emphasis on total transparency in everything we put inside the can. We made a big push to secure the Non-GMO Project Verified status and made sure that every can we sold was BPA Free well before some states started to mandate.

## Has Covid affected sales at all? Or maybe even helped to boost them?

We certainly saw a big impact as did many brands in our space. During the height of the early lockdowns, we did have a good pop because consumers weren't just buying some things... they were buying everything. We had a decent spring as a result but once the peak of summer kicked in, we were flying off the shelf and had a real challenge getting access to more production capacity to keep up with demand.



CANTEEN Vodka Soda   SARAH THOMAS

As a result of that flex in demand, and the challenges with being able to react adequately to it, we decided we had to make an investment in our own production facility so that in the event we had more spikes in the future, we would not be at the mercy of others' line time. We also leaned into our team and doubled our sales force over the summer hiring many very capable individuals who had been caught up in layoffs and furloughs. That's something we are very proud of.

## What do you think the ready-to-drink market is looking like in 2021 and beyond?

Consumers will continue to demand portability in their drinks. As seltzers continue to be a driver in consumption, so will the appetite for new brands and new offerings that continue to deliver 'better-for-you' attributes but are a step up from what most brands are offering. We believe there will be more and more popular brands launching new innovation across all spirit types.

There will also be NEW brands that will emerge including our two new brands Cantina Especial which is a low-proof, low calorie Tequila Soda which will launch in 3 unique flavors this Spring as well as our Waterloo Botanicals Gin Spritz brand which is a unique twist on a refreshing gin soda.

CANTEEN Vodka Soda

CANTEEN Vodka Soda    MATTHEW NADU

## Why does the market need CANTEEN?

Consumers need a better for you cocktail that offers premium taste with zero sugar and no carbs, for healthier enjoyment.

## What are the most popular flavors and is there anything in the works?

Watermelon and Black Cherry are our top sellers but we just launched Strawberry this fall and it's already pacing to be our #1 flavor soon. In the spring we will be launching our fresh take on Pineapple and look forward to several more flavor innovations by the end of the year. Cheers!

*Follow me on Twitter or LinkedIn. Check out my website or some of my other work here.*

 **Chelsea Davis**

I'm a freelance writer whose passion revolves around exploring the world, immersing myself in foreign cultures and, of course, eating and drinking everything delicious.… **Read More**

Reprints & Permissions

ADVERTISEMENT

# EXHIBIT 3

| | |
|---|---|
| **From:** | Jeffrey Theodore |
| **To:** | Bagdady, Justin; Noah Hagey |
| **Cc:** | Toby Rowe |
| **Subject:** | RE: Waterloo / Treaty Oak |
| **Date:** | Friday, February 19, 2021 4:37:00 PM |

Justin,

Thanks for chatting this morning. We appreciate your representations that Treaty Oak will not proceed with the Gin Spritz beverage that is the subject of our cease and desist letter and Complaint, further participate in any partnership with Brandon Cason or Spirited Cocktails to manufacture an alcoholic seltzer, or take any further steps to produce or market an alcoholic seltzer beverage until this matter is resolved.

That said, Treaty Oak and Spirited Cocktails' marketing efforts have already created confusion in the market among Waterloo's retail partners and potential or actual placements for a new alcoholic seltzer product on behalf of Treaty Oak and Spirited Cocktails. Waterloo has incurred significant legal expense and has had to address retail partners coming to it confused about a new alcoholic seltzer product bearing its name. As a result, Waterloo wants to understand what happened here and needs to be able to take steps to mitigate the effect of any infringement, including the confusion that has already arisen in the market. Yet we still have not received answers to the questions in Noah's letter of last Friday. Accordingly, by Monday please provide us the following information:

1. The names, locations, and contact information of all distributors, retailers, or others to whom Treaty Oak/Spirited Cocktails have marketed the infringing product.
2. Whether Treaty Oak and Spirited Cocktails have entered into any relationships or agreements with distributors, co-packers, or other third parties regarding the infringing product.
3. The quantity of infringing product that has been produced, including how many cans have been printed and the volume of liquid put in cans.
4. Where the infringing product is stored.
5. Whether and to whom any samples have been offered.

While we appreciate your assurances that the current infringement is not continuing, your email and conversation this morning failed to confirm that Treaty Oak will not attempt to trade off Waterloo's name and brand equity in the seltzer space going forward. Our client is concerned that Treaty Oak will pivot to a different design that continues to encroach on our brand equity, extends Treaty Oak's use of WATERLOO NO. 9 GIN outside its existing use in class 33 to Waterloo's territory in class 32, and takes advantage of the existing infringement by which Treaty Oak and Spirited Cocktails have already marketed their seltzer product to distributors and retailers using Waterloo's name and trade dress.

Waterloo is happy to discuss a commercial resolution that respects Treaty Oak's existing use of WATERLOO NO. 9 GIN for spirits in Class 33 but needs better information and further assurances that that Treaty Oak will not attempt to expand into sparkling beverages under the WATERLOO name. As Treaty Oak and Spirited Cocktails' recent conduct and marketing demonstrate, including the recent Forbes article, any such effort would leverage Waterloo's WATERLOO SPARKLING WATER

brand equity, not Treaty Oak's gin brand. If that is not a path that Treaty Oak is interested in, we will need to continue to pursue our legal remedies, including the existing action. In that event, please let us know whether you will be handling the litigation and can accept service of the Complaint.

Thanks,

Jeff

Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N LLP
Direct: (415) 599-0219

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Thursday, February 18, 2021 9:01 AM
**To:** Noah Hagey <hagey@braunhagey.com>
**Cc:** Jeffrey Theodore <Theodore@braunhagey.com>; Toby Rowe <rowe@braunhagey.com>
**Subject:** RE: Waterloo / Treaty Oak

I only represent the Treaty Oak entities.  I may end up representing others, but as I'm sure you can appreciate it's all still getting sorted out.

If you want to set up a call that is fine with me.  As I'm still new to this situation I don't really have much to report other than what is in my email from yesterday.  But if you want to have a call to touch base that's fine.

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM


ATTORNEYS & COUNSELORS

---

**From:** Noah Hagey <hagey@braunhagey.com>
**Sent:** Thursday, February 18, 2021 8:37 AM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Cc:** Jeffrey Theodore <Theodore@braunhagey.com>; Toby Rowe <rowe@braunhagey.com>
**Subject:** RE: Waterloo / Treaty Oak

Counsel,

Thanks for the response.  Your email was caught in our spam filter.

Given the urgency at hand, Waterloo filed its complaint yesterday in the WD Texas.  Attached is a courtesy copy for your records.

Based on your response below, I am hopeful we can work promptly to address Waterloo's concerns and hopefully resolve the matter.

Please also let us know whether you also represent co-defendant Brandon Cason and Spirited Cocktails / Canteen Cocktails.  As noted in the complaint and our letter, Mr. Cason and his company are working with Treaty Oak, and Mr. Cason separately has been publicizing his alleged ongoing role with Waterloo, including on LinkedIn and in a highly inaccurate and damaging Forbes article published this week. Both Mr. Cason and Mr. Barnes were terminated from Waterloo a long time ago and need to cease their efforts to usurp Waterloo's goodwill, which includes ceasing efforts to insinuate an ongoing affiliation with our client's business and brand.

I look forward to discussing these matters at your convenience this afternoon.  Regards,

Noah

J. Noah Hagey
Managing Partner
B R A U N H A G E Y & B O R D E N LLP
Direct:  (415) 599-0211
Cell:  (510) 332-7823

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Wednesday, February 17, 2021 11:44 AM
**To:** Noah Hagey <hagey@braunhagey.com>
**Subject:** Waterloo / Treaty Oak

Mr. Hagey,

I have been retained by Treaty Oak Distilling and I am in receipt of your letter to Mr. Barnes dated February 12.  I just received this today and so am still getting up to speed to some extent.  I can, though, report that without admitting any of the allegations set forth in your letter with respect to alleged infringement, and while reserving all rights, Treaty Oak will be redesigning the cans in question.  I can also report that none of these cans have yet gone to market, indeed as things stand none of the cans that do exist have even been filled with product.  So there have been no sales, and Treaty Oak agrees that it will not sell any of these goods in the can design shown in your letter.  My client is working on a redesign as we speak.

As noted above I am still getting up to speed on this to some extent but if you wish to set up a time to discuss please let me know.  To that end, please send future correspondence relating to this matter to my attention on behalf of Treaty Oak.  My contact information is listed below.  This email is a settlement communication subject to FRE 408.

Thank you.

Justin

**Justin P. Bagdady**
201 South Division Street | Suite 400 | Ann Arbor MI 48104
o: 734-930-2727 | JBagdady@BODMANLAW.COM

| Bio | vCard | 

**bodman**

ATTORNEYS & COUNSELORS

CONFIDENTIALITY NOTICE The contents of this message from Bodman PLC may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.

# EXHIBIT 4

| | |
|---|---|
| **From:** | Bagdady, Justin |
| **To:** | Jeffrey Theodore; Noah Hagey |
| **Cc:** | Toby Rowe |
| **Subject:** | RE: Waterloo / Treaty Oak |
| **Date:** | Wednesday, February 24, 2021 5:56:26 AM |

Hi Jeff,

There isn't much to say on top of what was in last night's email to you from counsel for SCC. SCC was leading those efforts and is the party in the best position to answer those questions. To be clear, Treaty Oak has no agreements with any distributors, retailers, co-packers, or any other third party with respect to the "infringing product," did not offer samples to any party other than SCC, and does not have any product in its possession.  It has not sold any.  As noted, the proposed agreement with SCC has been called off altogether.

One point I will clarify after discussing further with my client.  As you know, Treaty Oak has an existing registration for WATERLOO NO. 9 GIN in Class 33.  Class 33 includes alcoholic beverages and pre-mixed alcoholic beverages other than beer-based.  Class 32 does not include alcoholic beverages other than beer.  While my client is agreeable the idea of a co-existence agreement, which is a concept that I think makes a good amount of sense as part of a resolution between our clients, it would have to be consistent with my client's existing rights under Class 33.  That includes preserving my client's right to use its mark on a ready to drink pre-mixed cocktail product.  That is a product my client is still interested in pursuing.  It would be independent of SCC or Mr. Cason and use trade dress that is completely different from what is shown in your complaint.  This is not something that is in production, and no agreements are in place.  But preserving those rights will be a sticking point for Treaty Oak.  I do think it is something we ought to be able to hash out in the context of negotiating a coexistence agreement, but welcome your thoughts and ideas.  This information is being provided for purposes of facilitating settlement discussions, only.

Settlement Communication – Subject to FRE 408

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Tuesday, February 23, 2021 11:30 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Noah Hagey <hagey@braunhagey.com>
**Cc:** Toby Rowe <rowe@braunhagey.com>
**Subject:** RE: Waterloo / Treaty Oak

Justin,

While we have heard back from counsel for Cason and Spirited, we have not received any response from Treaty Oak or Barnes. Please let us know whether Treaty Oak is interested providing the information requested below and in a commercial resolution of this matter or whether we need to move forward with litigation and expedited discovery.

Thanks,

Jeff

Jeffrey M. Theodore
**BRAUNHAGEY & BORDEN** LLP
Direct:  (415) 599-0219

---

**From:** Jeffrey Theodore
**Sent:** Friday, February 19, 2021 4:38 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Noah Hagey <hagey@braunhagey.com>
**Cc:** Toby Rowe <rowe@braunhagey.com>
**Subject:** RE: Waterloo / Treaty Oak

Justin,

Thanks for chatting this morning. We appreciate your representations that Treaty Oak will not proceed with the Gin Spritz beverage that is the subject of our cease and desist letter and Complaint, further participate in any partnership with Brandon Cason or Spirited Cocktails to manufacture an alcoholic seltzer, or take any further steps to produce or market an alcoholic seltzer beverage until this matter is resolved.

That said, Treaty Oak and Spirited Cocktails' marketing efforts have already created confusion in the market among Waterloo's retail partners and potential or actual placements for a new alcoholic seltzer product on behalf of Treaty Oak and Spirited Cocktails. Waterloo has incurred significant legal expense and has had to address retail partners coming to it confused about a new alcoholic seltzer product bearing its name. As a result, Waterloo wants to understand what happened here and needs to be able to take steps to mitigate the effect of any infringement, including the confusion that has already arisen in the market. Yet we still have not received answers to the questions in Noah's letter of last Friday. Accordingly, by Monday please provide us the following information:

1. The names, locations, and contact information of all distributors, retailers, or others to whom Treaty Oak/Spirited Cocktails have marketed the infringing product.
2. Whether Treaty Oak and Spirited Cocktails have entered into any relationships or agreements

with distributors, co-packers, or other third parties regarding the infringing product.

3. The quantity of infringing product that has been produced, including how many cans have been printed and the volume of liquid put in cans.
4. Where the infringing product is stored.
5. Whether and to whom any samples have been offered.

While we appreciate your assurances that the current infringement is not continuing, your email and conversation this morning failed to confirm that Treaty Oak will not attempt to trade off Waterloo's name and brand equity in the seltzer space going forward. Our client is concerned that Treaty Oak will pivot to a different design that continues to encroach on our brand equity, extends Treaty Oak's use of WATERLOO NO. 9 GIN outside its existing use in class 33 to Waterloo's territory in class 32, and takes advantage of the existing infringement by which Treaty Oak and Spirited Cocktails have already marketed their seltzer product to distributors and retailers using Waterloo's name and trade dress.

Waterloo is happy to discuss a commercial resolution that respects Treaty Oak's existing use of WATERLOO NO. 9 GIN for spirits in Class 33 but needs better information and further assurances that that Treaty Oak will not attempt to expand into sparkling beverages under the WATERLOO name. As Treaty Oak and Spirited Cocktails' recent conduct and marketing demonstrate, including the recent Forbes article, any such effort would leverage Waterloo's WATERLOO SPARKLING WATER brand equity, not Treaty Oak's gin brand. If that is not a path that Treaty Oak is interested in, we will need to continue to pursue our legal remedies, including the existing action. In that event, please let us know whether you will be handling the litigation and can accept service of the Complaint.

Thanks,

Jeff

Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N LLP
Direct:  (415) 599-0219

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Thursday, February 18, 2021 9:01 AM
**To:** Noah Hagey <hagey@braunhagey.com>
**Cc:** Jeffrey Theodore <Theodore@braunhagey.com>; Toby Rowe <rowe@braunhagey.com>
**Subject:** RE: Waterloo / Treaty Oak

I only represent the Treaty Oak entities.  I may end up representing others, but as I'm sure you can appreciate it's all still getting sorted out.

If you want to set up a call that is fine with me.  As I'm still new to this situation I don't really

have much to report other than what is in my email from yesterday.  But if you want to have a call to touch base that's fine.

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM


ATTORNEYS & COUNSELORS

---

**From:** Noah Hagey <hagey@braunhagey.com>
**Sent:** Thursday, February 18, 2021 8:37 AM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Cc:** Jeffrey Theodore <Theodore@braunhagey.com>; Toby Rowe <rowe@braunhagey.com>
**Subject:** RE: Waterloo / Treaty Oak

Counsel,

Thanks for the response.  Your email was caught in our spam filter.

Given the urgency at hand, Waterloo filed its complaint yesterday in the WD Texas.  Attached is a courtesy copy for your records.

Based on your response below, I am hopeful we can work promptly to address Waterloo's concerns and hopefully resolve the matter.

Please also let us know whether you also represent co-defendant Brandon Cason and Spirited Cocktails / Canteen Cocktails.  As noted in the complaint and our letter, Mr. Cason and his company are working with Treaty Oak, and Mr. Cason separately has been publicizing his alleged ongoing role with Waterloo, including on LinkedIn and in a highly inaccurate and damaging Forbes article published this week. Both Mr. Cason and Mr. Barnes were terminated from Waterloo a long time ago and need to cease their efforts to usurp Waterloo's goodwill, which includes ceasing efforts to insinuate an ongoing affiliation with our client's business and brand.

I look forward to discussing these matters at your convenience this afternoon.  Regards,

Noah

J. Noah Hagey
Managing Partner
B R A U N H A G E Y & B O R D E N LLP
Direct:  (415) 599-0211
Cell:  (510) 332-7823

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information

that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Wednesday, February 17, 2021 11:44 AM
**To:** Noah Hagey <hagey@braunhagey.com>
**Subject:** Waterloo / Treaty Oak

Mr. Hagey,

I have been retained by Treaty Oak Distilling and I am in receipt of your letter to Mr. Barnes dated February 12.  I just received this today and so am still getting up to speed to some extent.  I can, though, report that without admitting any of the allegations set forth in your letter with respect to alleged infringement, and while reserving all rights, Treaty Oak will be redesigning the cans in question.  I can also report that none of these cans have yet gone to market, indeed as things stand none of the cans that do exist have even been filled with product.  So there have been no sales, and Treaty Oak agrees that it will not sell any of these goods in the can design shown in your letter.  My client is working on a redesign as we speak.

As noted above I am still getting up to speed on this to some extent but if you wish to set up a time to discuss please let me know.  To that end, please send future correspondence relating to this matter to my attention on behalf of Treaty Oak.  My contact information is listed below.  This email is a settlement communication subject to FRE 408.

Thank you.

Justin

**Justin P. Bagdady**
201 South Division Street | Suite 400 | Ann Arbor MI 48104
o: 734-930-2727 | JBagdady@BODMANLAW.COM

| Bio | vCard |  |

## bodman
ATTORNEYS & COUNSELORS

CONFIDENTIALITY NOTICE The contents of this message from Bodman PLC may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.

# EXHIBIT 5

| | |
|---|---|
| **From:** | <u>Jeffrey Theodore</u> |
| **To:** | <u>Bagdady, Justin</u> |
| **Cc:** | <u>Noah Hagey</u> |
| **Subject:** | RE: Rule 408 Communication: Waterloo v. Spirited Cocktails Corporation et al. |
| **Date:** | Wednesday, February 24, 2021 3:25:00 PM |

Justin,

Thanks for the call this morning and for confirming that Treaty Oak is not currently launching and does not plan to launch a hard seltzer, spritz, or other can-based product while the Parties' discussions are ongoing. We look forward to hearing back from you after further discussion with your clients.

In the interim, we have received information from Spirited/Canteen about its efforts to promote the Waterloo No. 9 Gin Spritz product but have not heard anything from your client. Please provide us the following information so that Waterloo can make all efforts to mitigate its damages and eliminate the confusion in the marketplace:

1. The names, locations, and contact information of all distributors, retailers, or others to whom Treaty Oak has marketed the infringing product.
2. Whether Treaty Oak has entered into any relationships or agreements with distributors, co-packers, or other third parties regarding the infringing product.
3. The quantity of infringing product that has been produced, including how many cans have been printed and the volume of liquid put in cans.
4. Where the infringing product is stored.
5. Whether and to whom any samples have been offered.

Thanks,

Jeff



Jeffrey M. Theodore

**B R A U N** H A G E Y **& B O R D E N** LLP

Direct:  (415) 599-0219

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Wednesday, February 24, 2021 5:29 AM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Rad Wood <rwood@velawoodlaw.com>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Toby Rowe <rowe@braunhagey.com>; Pete Kennedy <pkennedy@gdhm.com>; Jeff Villalobos <jvillalobos@velawoodlaw.com>
**Subject:** RE: Rule 408 Communication: Waterloo v. Spirited Cocktails Corporation et al.

9 Pacific is ok for me.


**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Tuesday, February 23, 2021 10:00 PM
**To:** Rad Wood <rwood@velawoodlaw.com>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Toby Rowe <rowe@braunhagey.com>; Bagdady, Justin <JBagdady@BODMANLAW.COM>; Pete Kennedy <pkennedy@gdhm.com>; Jeff Villalobos <jvillalobos@velawoodlaw.com>
**Subject:** RE: Rule 408 Communication: Waterloo v. Spirited Cocktails Corporation et al.

Thanks Rad. Justin and Pete, please let us know if those times work for you.

Thanks,

Jeff



Jeffrey M. Theodore
**B R A U N** H A G E Y **& B O R D E N** LLP
Direct:  (415) 599-0219

---

**From:** Rad Wood <rwood@velawoodlaw.com>
**Sent:** Tuesday, February 23, 2021 5:43 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Toby Rowe <rowe@braunhagey.com>; JBagdady@bodmanlaw.com; Pete Kennedy <pkennedy@gdhm.com>; Jeff Villalobos <jvillalobos@velawoodlaw.com>
**Subject:** Re: Rule 408 Communication: Waterloo v. Spirited Cocktails Corporation et al.

Jeff--

My apologies for the delay. I have a deadline tomorrow in an asylum case I am working and that has taken much of my day. I will get you this information either by the end of the night or first thing tomorrow morning. I can do 9am PST for a call tomorrow, and also 4pm PST. Let me know which

time works best for you -- Justin and Pete feel free to jump in here with a time that works for you all as well.

**Radney Wood**
Partner



www.velawoodlaw.com
512.813.7300 (o)
*************************************************

CONFIDENTIALITY NOTICE:
This message and any attachments are for the sole use of the intended recipient(s) and may contain
privileged or other confidential information. Any unauthorized review, use, disclosure, copying or
distribution is prohibited. If you have received this message in error, please immediately advise
the sender by reply email and delete the message and any attachments without copying or disclosing the
contents. Thank you.

On Tue, Feb 23, 2021 at 3:23 PM Jeffrey Theodore <Theodore@braunhagey.com> wrote:

> Rad,
>
> Thanks for getting back to me. We look forward to receiving the information and are available to
> chat this afternoon after 3 PM PT or tomorrow at 9 AM PT or after 330 PM PT.
>
> Thanks,
>
> Jeff
>
>
>
> Jeffrey M. Theodore
> B R A U N H A G E Y & B O R D E N LLP
> Direct: (415) 599-0219
>
>
> **From:** Rad Wood <rwood@velawoodlaw.com>
> **Date:** Tuesday, February 23, 2021 at 11:10 AM
> **To:** Jeffrey Theodore <Theodore@braunhagey.com>
> **Cc:** Noah Hagey <hagey@braunhagey.com>, Toby Rowe <rowe@braunhagey.com>,
> JBagdady@bodmanlaw.com <JBagdady@bodmanlaw.com>, Pete Kennedy
> <pkennedy@gdhm.com>, Jeff Villalobos <jvillalobos@velawoodlaw.com>
> **Subject:** Re: Rule 408 Communication: Waterloo v. Spirited Cocktails Corporation et al.

Jeff--

I'm working on getting you this additional information. We'd be happy to chat with you on these requests later today or tomorrow, as well. I should have this information to you later today.

Rad

**Radney Wood**
Partner

**Error! Filename not specified.**
www.velawoodlaw.com
512.813.7300 (o)
*************************************************
CONFIDENTIALITY NOTICE:
This message and any attachments are for the sole use of the intended recipient(s) and may contain privileged or other confidential information. Any unauthorized review, use, disclosure, copying or distribution is prohibited. If you have received this message in error, please immediately advise the sender by reply email and delete the message and any attachments without copying or disclosing the contents. Thank you.

On Mon, Feb 22, 2021 at 8:15 PM Jeffrey Theodore <Theodore@braunhagey.com> wrote:

> Rad,
>
> We too would like to move forward with a swift and simple settlement of this matter and are not (yet) asking for reimbursement of our attorneys' fees. However, the efforts of your clients and of Treaty Oak so far have caused significant confusion in the market and disruption to my client. In order to mitigate that as much as possible, we need some basic information, which Noah requested two weeks ago and which was detailed in my email below.
>
> Your assurance that "no **product** was ever produced, canned, marketed, or sold" (emphasis added), while appreciated, appears to refer to the liquid itself and does not answer our questions about retailers and others to whom the Waterloo Gin Spritz was marketed, agreements with distributors or other third parties, how many cans have been printed, where they are stored, and whether sample cans have been offered. Waterloo needs this information so that it can clarify the record and quell any confusion in the marketplace. Please provide this information by the end of the day tomorrow so that we do not need to move for expedited discovery.
>
> Let's have a call tomorrow to discuss next steps. If necessary we can also discuss service of the summons (attached) but let's see how the discussion goes.
>
> Thanks,

Jeffrey M. Theodore

**B R A U N H A G E Y & B O R D E N** LLP

Direct: (415) 599-0219

---

**From:** Rad Wood <rwood@velawoodlaw.com>
**Sent:** Monday, February 22, 2021 1:56 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Toby Rowe <rowe@braunhagey.com>; JBagdady@bodmanlaw.com; Pete Kennedy <pkennedy@gdhm.com>; Jeff Villalobos <jvillalobos@velawoodlaw.com>
**Subject:** Rule 408 Communication: Waterloo v. Spirited Cocktails Corporation et al.

Jeff--

Thanks for following up on this. To be clear, as I stated in my previous email, my clients disagree with your client's allegations and do not believe their actions constituted infringement. My clients are moving away from using the proposed traded dress simply because they do not want to fight with Waterloo Sparkling Water on this issue. Given the existing relationships between the parties, we think it better to move in a different direction. That is all.

And while your client may have incurred legal expenses, that was its choice. They could have just as easily have picked up the phone and called my clients and expressed their concern that way; the result would have been the same. In fact, the reason your client discovered the trade dress at issue was that my clients, believing your client was fine with the proposed product, shared images of the trade dress with a member of your client's leadership team; this is not the action of parties that are seeking to harm your client.

We would like to move forward with a swift and simple settlement to this matter, but to the extent that Waterloo Sparkling Water is suggesting that my clients pay its legal expenses, please understand that we will not be covering any attorneys' fees related to your client's actions. The law considers Waterloo Sparkling Water distinct from the other Class 032 and 033 Waterloos and the issues in this matter resulted from a misunderstanding between individuals who have ongoing working relationships. It is unlikely the law or the facts would result in this being an exceptional case warranting attorney's fees, especially given my clients' immediate agreement to not use the trade dress at issue.

As to your questions below, I thought I answered them in my previous email when I stated that no product was ever produced, canned, marketed, or sold. Because none was produced, none is being stored, none was given out as samples, and no amount exists anywhere.

I am writing this response on behalf of my clients only, but am copying the attorneys for the other defendants in an effort to streamline communications about this matter.

We look forward to hearing back from you and working toward a resolution.

Rad

**Radney Wood**
Partner

www.velawoodlaw.com
512.813.7300 (o)
**************************************************

CONFIDENTIALITY NOTICE:
This message and any attachments are for the sole use of the intended recipient(s) and may contain privileged or other confidential information. Any unauthorized review, use, disclosure, copying or distribution is prohibited. If you have received this message in error, please immediately advise the sender by reply email and delete the message and any attachments without copying or disclosing the contents. Thank you.

On Fri, Feb 19, 2021 at 6:43 PM Jeffrey Theodore <Theodore@braunhagey.com> wrote:

Dear Rad,

Thanks for speaking yesterday and for confirming that your clients will not make any further use of the WATERLOO name. We look forward to working with you on a resolution of this matter and the pending litigation.

That said, Spirited Cocktails and Treaty Oak's marketing efforts have already created confusion in the market among Waterloo's retail partners and potential or actual placements for the infringing alcoholic seltzer product. Waterloo has incurred significant legal expense and has had to address retail partners coming to it confused about a new alcoholic seltzer product bearing its name. As a result, Waterloo wants to understand what happened here and needs to be able to take steps to mitigate the effect of any infringement, including the confusion that has already arisen in the market. Yet we still have not received answers to the questions in Noah's letter of last Friday. Accordingly, by Monday please provide us the following information:

1. The names, locations, and contact information of all distributors, retailers, or others to whom Spirited Cocktails/Treaty Oak have marketed the infringing product.
2. Whether Spirited Cocktails and Treaty Oak have entered into any relationships or agreements with distributors, co-packers, or other third parties regarding the infringing product.
3. The quantity of infringing product that has been produced, including how many cans have been printed and the volume of liquid put in cans.
4. Where the infringing product is stored.
5. Whether and to whom any samples have been offered.

We look forward to a commercial resolution by which your clients acknowledge Waterloo's

rights and desist from use of the Waterloo name and need the information described above to mitigate the existing damage to our brand.

Thanks,

Jeff


Jeffrey M. Theodore
**B R A U N H A G E Y & B O R D E N** LLP
Direct:  (415) 599-0219

---

**From:** Jeffrey Theodore
**Sent:** Thursday, February 18, 2021 12:58 PM
**To:** rwood@velawoodlaw.com
**Cc:** Noah Hagey <hagey@braunhagey.com>; Toby Rowe <rowe@braunhagey.com>
**Subject:** RE: Waterloo v. Spirited Cocktails Corporation

Rad,

We appreciate the email and the representations below. Just left you a voice message. We should connect about resolving this matter and memorializing the path forward for both sides here.

Regards,

Jeff


Jeffrey M. Theodore
**B R A U N H A G E Y & B O R D E N** LLP
Direct:  (415) 599-0219

---

> **From:** Rad Wood <rwood@velawoodlaw.com>
> **Date:** February 18, 2021 at 10:49:58 AM PST
> **To:** Noah Hagey <hagey@braunhagey.com>
> **Subject: Waterloo v. Spirited Cocktails Corporation**
>
>
> Mr. Hagey--

My firm represents Brandon Cason and Spirited Cocktails Corporation. I am in receipt of your letter to Treaty Oak Distilling dated February 12, 2021, your letter to Forbes dated February 17, 2021, as well as a copy of the lawsuit that Waterloo Sparkling Water filed yesterday against Treaty Oak Distilling, Daniel Barnes, Spirited Cocktails Corporation, and Brandon Cason.

While we do not agree with the allegations contained in the above-referenced documents and dispute all claims you have made, my clients have no desire to continue any conduct that Waterloo Sparkling Water disagrees with regarding the Treaty Oak Distilling Waterloo No. 9 Gin product.

As such, I am writing to inform you that no Waterloo No.9 Gin products were ever manufactured, produced, or sold and that my client Spirited Cocktails Corporation has decided not to move forward with its proposed relationship with Treaty Oak Distilling. Furthermore, I can assure you that we will not market, sell, manufacture, or in any way be involved in any product with the name Waterloo in the future. Instead, we are moving forward with a Canteen Gin Spritz product.

As to your allegations regarding the inaccuracies in the Forbes article, we have reached out to Forbes to update the article to address your concerns. My client's quotes regarding his personal mixing of Waterloo Sparkling Water with Deep Eddy at home as his inspiration for Canteen was taken out of context and we are removing the references to the Waterloo No. 9 Gin Spritz, which, as I stated above, we will not move forward with. As to my client's LinkedIn account, I can assure you this was an innocent oversight; many people fail to update old jobs on LinkedIn. He has now updated his LinkedIn account to include his end date with Waterloo Sparkling Water.

I do want to emphasize that my clients wish nothing but the best for Waterloo Sparkling Water. Mr. Cason, as a current shareholder, and former co-founder, wants the brand to succeed and would never do anything that would harm the value he helped create.

I called your office earlier but got your voicemail. If you are available, I would be happy to hop on a call to discuss these issue in further detail and hopefully come to a swift resolution.

Thank you,

Rad

**Radney Wood**
Partner

[www.velawoodlaw.com](www.velawoodlaw.com)
512.813.7300 (o)
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTICE:
This message and any attachments are for the sole use of the intended recipient(s) and may contain privileged or other confidential information. Any unauthorized review, use, disclosure, copying or distribution is prohibited. If you have received this message in error, please immediately advise the sender by reply email and delete the message and any attachments without copying or disclosing the contents. Thank you.

# EXHIBIT 6

| | |
|---|---|
| **From:** | Jeffrey Theodore |
| **To:** | Kornfield, Susan; Noah Hagey |
| **Cc:** | Bagdady, Justin; Heather Schneider; Ryan Botkin |
| **Subject:** | RE: Proposed Resolution |
| **Date:** | Monday, March 15, 2021 8:26:00 PM |
| **Attachments:** | Waterloo v Treaty Oak et al - Stipulated Injunction.docx |

Counsel,

We have had a chance to discuss your email and your new positions with our client.

As you probably anticipated, there was not much here to evaluate, and most of the facts you recount are demonstrably incorrect.  The suggested terms also are quite different than what Mr. Bagdady communicated on prior occasions, including just days before your email.  Then, he indicated that Treaty Oak was moving away from the Waterloo concept in RTD, but sought some limited right to use the term as a source of origin designation.

In light of your email, we are providing notice of Waterloo's intention to seek a preliminary injunction regarding defendants' product named in the suit.  Attached is the form of injunction we intend to seek and urge you to consider stipulating to its entry. The language conforms to what defendants already have agreed to regarding the withdrawal of the infringing products and termination of the campaign.

If we cannot agree to an injunction along the lines of the attached, we will need to formally move the court for its entry and seek additional discovery.

We are available to meet and confer Tuesday at 4pm CT and Wednesday at 2pm CT.

Regards,


Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N LLP
Direct:  (415) 599-0219


**From:** Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Sent:** Tuesday, March 9, 2021 1:47 PM
**To:** Noah Hagey <hagey@braunhagey.com>
**Cc:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Jeffrey Theodore <Theodore@braunhagey.com>; Heather Schneider <HSchneider@willkie.com>
**Subject:** Proposed Resolution

Dear Mr. Hagey:

Based upon our investigation of the facts of this matter, we propose the following resolution of the dispute.  In particular, our framework is based upon the following considerations:

1. By 2017, when your client was formed, my client had been using the trademarks WATERLOO and WATERLOO No. 9 for at least 5 years.  After some discussion, my client agreed to allow your client to use the term "Waterloo" in its company name, and to use the term WATERLOO SPARKLING WATER as its product name, solely for sparkling water.  My client did not agree to allow your client to expand the use of the mark.  My client did not agree to limit its use of its name and trademark, other than for sparkling water.

2. Your client can claim no rights, trademark or otherwise, in descriptive colors used in its product packaging.  Purple for grape, red for strawberry, green for lime, and so on.

3. Your client has no registered trade dress.

4. My client has sold no products in connection with the trade dress about which your client complains.  My client does not intend to sell products in connection with the trade dress about which your client complains.  My client agrees to enter into a stipulation representing it will not sell products in connection with the trade dress about which your client complains.

5. My client is also willing to undertake reasonable efforts to address any confusion that may have been caused by SCC's promotional activities.  We also understand SCC has already undertaken such efforts and will continue to do so as needed.

6. My client will agree to resolve this matter by entering into a stipulated order and settlement agreement that reflect points 4 and 5.  As part of the agreement, the lawsuit would be dismissed with prejudice with the Court retaining jurisdiction.

We assume that you do not intend to subject your client to a trademark registration cancellation proceeding.  Accordingly, we assume you are not contending that your client's sparkling water product cannot co-exist with my client's products that contain alcohol.

We look forward to hearing from you.

Regards,
Susan Kornfield

**Susan M. Kornfield**
Also Admitted in Illinois
BODMAN PLC
Suite 400
201 South Division Street
Ann Arbor, Michigan 48104
office: 734-930-2488
email: skornfield@bodmanlaw.com
My biography on bodmanlaw.com
Pronouns:  she/her/hers


*Bodman is a Corp! Magazine*
*"Diversity-Focused Company"*



CONFIDENTIALITY NOTICE The contents of this message from Bodman PLC may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.

PRIVILEGED AND CONFIDENTIAL
Draft 2/25/2021

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| WATERLOO SPARKLING WATER CORP., | § § § | Civil Action No. 1:21-CV-161-RP |
| Plaintiff, | § § | |
| v. | § § § | **JURY TRIAL DEMANDED** |
| TREATY OAK BREWING AND DISTILLING CO., LLC, TREATY OAK BRANDS, LLC, TREATY OAK OPERATIONS, LLC,  TREATY OAK HOLDINGS, LLC, SPIRITED COCKTAILS CORPORATION, DANIEL BARNES, and BRANDON CASON, | § § § § § § § § | |
| Defendants. | § § § | |

### JOINT AGREED PRELIMINARY INJUNCTION ORDER

Plaintiff Waterloo Sparkling Water Corp. ("Waterloo") and Defendants Treaty Oak

Brewing and Distilling Co., LLC, Treaty Oak Brands, LLC, Treaty Oak Operations, LLC, Treaty

Oak Holdings, LLC, Spirited Cocktails Corporation, Daniel Barnes, and Brandon Cason

(collectively, "Defendants"), appearing through and represented by each's undersigned counsel,

hereby stipulated to the following Joint [Proposed] Preliminary Injunction Order:

**WHEREAS**, on February 17, 2021 Plaintiff Waterloo filed this action against

Defendants for trademark infringement, false designation of origin, trade dress infringement,

unfair competition, declaratory relief, and unjust enrichment under federal and state law.

**WHEREAS**, Waterloo is the owner of a federally registered mark WATERLOO SPARKLING WATER and Design (U.S. Reg. No. 5356607), associated common law trademark rights and related trade dress shown below (the "WATERLOO IP") in connection with the sale of its products since at least 2017:



**WHEREAS**, in 2021, Defendants developed, marketed, promoted, and sought to launch a "Waterloo No. 9 Gin Spritz" product (the "GIN SPRITZ PRODUCT") in a ready-to-drink can format with the following packaging, by way of example:



**WHEREAS**, Waterloo notified Defendants of its intention to seek a formal preliminary injunction to enjoin production, sale, or marketing of the GIN SPRITZ PRODUCT or any related beverage product infringing or resembling the WATERLOO IP.

**WHEREAS**, in response to the Complaint and Waterloo's intended motion for preliminary injunction, Defendants each represented that, in addition to other relief, they would immediately halt, cease and desist any promotion, marketing, sale or distribution of the GIN SPRITZ PRODUCT.

**WHEREAS**, Waterloo seeks to memorialize Defendants' representations into a binding order so as to avoid any uncertainty regarding Defendants' conduct during the pendency of this

litigation, without prejudice to or waiver of any party's claims, defenses, arguments or positions in the litigation itself.

**WHEREAS**, this Court has authority to issue a preliminary injunction pursuant to Fed. R. Civ. P. 65 and Lanham Act § 34, 15 U.S.C. § 1116.

**NOW THEREFORE**, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1.      Each Defendant and its respective officers, directors, employees, agents, corporate parents, subsidiaries, affiliates, and distributors, is restrained and enjoined, during the pendency of this action from directly or indirectly:

a.      Marketing, promoting, selling, offering, distributing, manufacturing, purchasing, importing, advertising, or otherwise republishing the GIN SPRITZ PRODUCT or any similar ready-to-drink beverage product prominently bearing the WATERLOO name.

b.      Instructing, aiding, abetting, or acquiescing in any other person or business entity's conduct that would violate Paragraph 1(a) above.

2.      Each Defendant shall confirm to Waterloo that it has removed all promotions, marketing and/or advertisements of the GIN SPRITZ PRODUCT from any and all websites, promotional decks, advertisements, stores, events, and other advertising locations within its direct or indirect control and shall refrain from such advertising during the pendency of this lawsuit.

3.      Each Defendant shall provide Waterloo the name and contact information (if known) of each person who received or made any communication, document or thing regarding the GIN SPRITZ PRODUCT, and the date such event(s) occurred.

4.      Within five (5) business days following the entry of this Order, each Defendant shall serve notice on Plaintiff certifying Defendant's compliance with all terms of the Order.

5.      This Preliminary Injunction shall remain in force and effect through and until a final judgment in this litigation, or upon good cause by the Court upon properly noticed motion by an interested party hereto.

6.      The Court shall retain jurisdiction over the subject matter and the parties to enforce the terms of this Preliminary Injunction.

**IT IS SO ORDERED.**

Dated:  _____          _____
                                     The Honorable Robert Pitman
                                     United States District Judge

**SO STIPULATED AND AGREED.**

**WATERLOO SPARKLING WATER CORP.**

_____          _____
Signature                                                                      Date

Name: _____

Title:  _____

**TREATY OAK BREWING AND DISTILLING CO., LLC**

_____          _____
Signature                                                                      Date

Name: _____

Title:  _____

**TREATY OAK BRANDS, LLC**

_____          _____
Signature                                                                      Date

Name: _____

Title:  _____

**TREATY OAK OPERATIONS, LLC**

_____          _____
Signature                                                                      Date

Name: _____

Title:  _____

**TREATY OAK HOLDINGS, LLC**

_____          _____
Signature                                                            Date

Name: _____

Title:  _____

**DANIEL BARNES**

_____          _____
Signature                                                            Date

Name: _____

Title:  _____

**SPIRITED COCKTAILS CORPORATION**

_____          _____
Signature                                                            Date

Name: _____

Title:  _____

**BRANDON CASON**

_____          _____
Signature                                                            Date

Name: _____

Title:  _____

# EXHIBIT 7

| | |
|---|---|
| **From:** | Noah Hagey |
| **To:** | Kornfield, Susan |
| **Cc:** | Jeffrey Theodore; Bagdady, Justin; Heather Schneider; Ryan Botkin |
| **Subject:** | PI motion |
| **Date:** | Monday, March 22, 2021 7:31:42 AM |

Counsel,

It has now been a week.  We believe the draft PI order accurately captures what defendants have represented and, if not, would only heighten our need to proceed with the motion.  Please let us know by close of business whether you agree with the stipulation and, if not, the material terms you object to.  Thanks,

Noah

J. Noah Hagey
BraunHagey & Borden LLP
hagey@braunhagey.com
Office (415) 599-0211
Cell (510) 332-7823

> On Mar 17, 2021, at 9:59 AM, Kornfield, Susan <SKornfield@bodmanlaw.com> wrote:

> Thank you for your email and attachment, received yesterday.  We are preparing an updated version that we expect will be more accurate and neutral, will be consistent with the undertaking my client has already expressed, and will avoid unnecessary adversarial proceedings with the Court.  Especially for something that should be so simple in a case such as this.

> **Susan M. Kornfield**
> 734-930-2488
> SKornfield@BODMANLAW.COM



> ATTORNEYS & COUNSELORS

> **From:** Jeffrey Theodore <Theodore@braunhagey.com>
> **Sent:** Monday, March 15, 2021 11:26 PM
> **To:** Kornfield, Susan <SKornfield@BODMANLAW.COM>; Noah Hagey <hagey@braunhagey.com>
> **Cc:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Heather Schneider

<HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Proposed Resolution

Counsel,

We have had a chance to discuss your email and your new positions with our client.

As you probably anticipated, there was not much here to evaluate, and most of the facts you recount are demonstrably incorrect.  The suggested terms also are quite different than what Mr. Bagdady communicated on prior occasions, including just days before your email.  Then, he indicated that Treaty Oak was moving away from the Waterloo concept in RTD, but sought some limited right to use the term as a source of origin designation.

In light of your email, we are providing notice of Waterloo's intention to seek a preliminary injunction regarding defendants' product named in the suit.  Attached is the form of injunction we intend to seek and urge you to consider stipulating to its entry. The language conforms to what defendants already have agreed to regarding the withdrawal of the infringing products and termination of the campaign.

If we cannot agree to an injunction along the lines of the attached, we will need to formally move the court for its entry and seek additional discovery.

We are available to meet and confer Tuesday at 4pm CT and Wednesday at 2pm CT.

Regards,

Jeffrey M. Theodore
**B R A U N H A G E Y & B O R D E N** LLP
Direct:  (415) 599-0219

# EXHIBIT 8

| | |
|---|---|
| **From:** | Kornfield, Susan |
| **To:** | Noah Hagey |
| **Cc:** | Jeffrey Theodore; Bagdady, Justin; "Heather Schneider"; "Ryan Botkin"; "Pete Kennedy"; "Cleve Burke"; "Rick Harrison"; "Rad Wood" |
| **Subject:** | RE: PI motion |
| **Date:** | Monday, March 22, 2021 8:32:59 AM |
| **Attachments:** | Waterloo v Treaty Oak et al - Stipulated Injunction 3.21.1.docx |

Attached is the proposed stip, revised for accuracy.

While we do not represent all defendants, we think this document may very well be accepted by all defendants.

Regards.

---

**From:** Noah Hagey <hagey@braunhagey.com>
**Sent:** Monday, March 22, 2021 11:10 AM
**To:** Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Jeffrey Theodore <Theodore@braunhagey.com>; Bagdady, Justin <JBagdady@BODMANLAW.COM>; Heather Schneider <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** Re: PI motion

Then we were lied to and will proceed accordingly.

J. Noah Hagey
BraunHagey & Borden LLP
hagey@braunhagey.com
Office (415) 599-0211
Cell (510) 332-7823


On Mar 22, 2021, at 7:34 AM, Kornfield, Susan <SKornfield@bodmanlaw.com> wrote:


We have prepared a revised draft as yours was not accurate.  We (or other counsel for a defendant) will send to you today.

Regards.

---

**From:** Noah Hagey <hagey@braunhagey.com>
**Sent:** Monday, March 22, 2021 10:32 AM
**To:** Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Jeffrey Theodore <Theodore@braunhagey.com>; Bagdady, Justin <JBagdady@BODMANLAW.COM>; Heather Schneider <HSchneider@willkie.com>;

Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** PI motion

Counsel,

It has now been a week.  We believe the draft PI order accurately captures what defendants have represented and, if not, would only heighten our need to proceed with the motion.  Please let us know by close of business whether you agree with the stipulation and, if not, the material terms you object to.  Thanks,

Noah

J. Noah Hagey
BraunHagey & Borden LLP
hagey@braunhagey.com
Office (415) 599-0211
Cell (510) 332-7823


On Mar 17, 2021, at 9:59 AM, Kornfield, Susan <SKornfield@bodmanlaw.com> wrote:


Thank you for your email and attachment, received yesterday.  We are preparing an updated version that we expect will be more accurate and neutral, will be consistent with the undertaking my client has already expressed, and will avoid unnecessary adversarial proceedings with the Court.  Especially for something that should be so simple in a case such as this.


**Susan M. Kornfield**
734-930-2488
SKornfield@BODMANLAW.COM


ATTORNEYS & COUNSELORS

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Monday, March 15, 2021 11:26 PM
**To:** Kornfield, Susan <SKornfield@BODMANLAW.COM>; Noah Hagey <hagey@braunhagey.com>

**Cc:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Heather Schneider
<HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Proposed Resolution


Counsel,

We have had a chance to discuss your email and your new positions with
our client.

As you probably anticipated, there was not much here to evaluate, and
most of the facts you recount are demonstrably incorrect.  The suggested
terms also are quite different than what Mr. Bagdady communicated on
prior occasions, including just days before your email.  Then, he indicated
that Treaty Oak was moving away from the Waterloo concept in RTD, but
sought some limited right to use the term as a source of origin
designation.

In light of your email, we are providing notice of Waterloo's intention to
seek a preliminary injunction regarding defendants' product named in the
suit.  Attached is the form of injunction we intend to seek and urge you to
consider stipulating to its entry. The language conforms to what
defendants already have agreed to regarding the withdrawal of the
infringing products and termination of the campaign.

If we cannot agree to an injunction along the lines of the attached, we will
need to formally move the court for its entry and seek additional
discovery.

We are available to meet and confer Tuesday at 4pm CT and Wednesday
at 2pm CT.

Regards,


Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N LLP
Direct:  (415) 599-0219

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| WATERLOO SPARKLING WATER CORP., | § § § | Civil Action No. 1:21-CV-161-RP |
| Plaintiff, | § § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| TREATY OAK BREWING AND DISTILLING CO., LLC, TREATY OAK BRANDS, LLC, TREATY OAK OPERATIONS, LLC,  TREATY OAK HOLDINGS, LLC, SPIRITED COCKTAILS CORPORATION, DANIEL BARNES, and BRANDON CASON, | § § § § § § § § | |
| Defendants. | § § § | |

## <u>JOINT AGREED PRELIMINARY INJUNCTION ORDER</u>

Plaintiff Waterloo Sparkling Water Corp. ("WSW") and Defendants (1) Treaty Oak Brewing and Distilling Co., LLC, Treaty Oak Brands, LLC, Treaty Oak Operations, LLC, Treaty Oak Holdings, LLC (collectively, "Treaty Oak"), Spirited Cocktails Corporation ("SCC"), Daniel Barnes ("Mr. Barnes"), and Brandon Cason ("Mr. Cason") (collectively, "Defendants"), appearing through and represented by its/his undersigned counsel, hereby stipulated to the following Joint [Proposed] Preliminary Injunction Order:

1. **WHEREAS**, on February 17, 2021 Plaintiff WSW filed this action against Defendants for trademark infringement, false designation of origin, trade dress infringement, unfair competition, declaratory relief, and unjust enrichment under federal and state law.

2. **WHEREAS** WSW is the owner of the following federally registered mark:

, U.S. Reg. No. 5,356,607) ("WSW Logo") for "sparkling water" and has sold its products since August 2017.  WSW has used certain design elements appearing on its cans in connection with the sale of its products, as illustrated below:



("WSW Can Design").  WSW does not have a U.S. registration for the WSW Can Design. WSW does not have a U.S. trademark registration for WATERLOO SPARKING WATER (Standard Character).  WSW claims certain common law trademark rights associated with the WATERLOO SPARKING WATER (Standard Character) and the WSW Can Design.  However, WSW does not have exclusive rights in color elements where the color is functional (purple to designate grape flavor, pinkish-red for grapefruit, orange for mango, green for lemon-line, and the like).

3.  **WHEREAS**, Defendant Treaty Oak Brewing and Distilling, LLC is the owner of a federally registered mark WATERLOO NO. 9 GIN (U.S. Reg. No. 6,003,279) ("WATERLOO NO. 9 Mark") for "spirits" and has used the WATERLOO NO. 9 Mark since at least 2011.  Treaty Oak Brewing and Distilling, LLC and/or its related business entities claim common law rights in other WATERLOO marks and design elements used on product labels and packaging.

4.  **WHEREAS**, following the successful launch of SCC's CANTEEN SPIRITS® brand ready-to-drink vodka soda in a can, below:



certain Defendants decided to explore interest in the market for a WATERLOO NO. 9 GIN SPRITZ in a ready-to-drink can. They considered using the packaging below, and sent a copy of such packaging to WSW in advance of such market exploration:



**5. WHEREAS** WSW notified Defendants of its intention to seek a formal preliminary injunction to enjoin production, sale, or marketing of the WATERLOO NO. 9 GIN SPRITZ product or any related beverage product infringing or resembling the WSW Can Design.

**6. WHEREAS**, prior to the filing of the Complaint and Waterloo's intended motion for preliminary injunction, each Defendant represented that it would immediately halt, cease and desist any promotion, marketing, sale or distribution of the WATERLOO NO. 9 GIN SPRITZ product in the packaging sent by Defendants to WSW (see Section 4, above). Defendants also represented to WSW, prior to the filing of the Complaint, that there had been no sales of the WATERLOO NO. 9 GIN SPRITZ product and that they agreed not to sell the WATERLOO NO. 9 GIN SPRITZ product in the can with the designs about which WSW complained.

**7. WHEREAS** the parties seek to memorialize Defendants' representations into a binding order without prejudice to or waiver of any party's claims, defenses, arguments or positions in the litigation itself.

**8. WHEREAS**, this Court has authority to issue a preliminary injunction pursuant to Fed. R. Civ. P. 65 and The U.S. Trademark Act, 15 U.S.C. §§ 1051, 1125(a).

**NOW THEREFORE**, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1.      Each Defendant and its respective officers, directors, employees, agents, corporate parents, subsidiaries, affiliates, and distributors, is restrained and enjoined, during the pendency of this action from directly or indirectly marketing, promoting, selling, offering, distributing, manufacturing, purchasing, importing, advertising, or otherwise republishing the WATERLOO NO. 9 GIN SPRITZ product using the packaging below:



2.      Each Defendant shall confirm to WSW that it has removed all promotions, marketing and/or advertisements of the WATERLOO NO. 9 GIN SPRITZ product using the packaging set forth above from any and all websites, promotional decks, advertisements, stores, events, and other advertising locations within its direct or indirect control and shall refrain from such advertising during the pendency of this lawsuit.

3.      Within five (5) business days following the entry of this Order, each Defendant shall serve notice on Plaintiff certifying Defendant's compliance with all terms of the Order.

4.      This Preliminary Injunction shall remain in force and effect through and until a final judgment in this litigation, or upon good cause by the Court upon properly noticed motion by an interested party hereto.

5.      The Court shall retain jurisdiction over the subject matter and the parties to enforce the terms of this Preliminary Injunction.

**IT IS SO ORDERED.**

Dated:  _____

_____
The Honorable Robert Pitman
United States District Judge

**SO STIPULATED AND AGREED.**

**WATERLOO SPARKLING WATER CORP.**

_____          _____
Signature                                                                Date

Name: _____

Title:   _____

**TREATY OAK BREWING AND DISTILLING CO., LLC**

_____          _____
Signature                                                                Date

Name: _____

Title:   _____

**TREATY OAK BRANDS, LLC**

_____          _____
Signature                                                                Date

Name: _____

Title:   _____

**TREATY OAK OPERATIONS, LLC**

_____          _____
Signature                                                                Date

Name: _____

Title:   _____

**TREATY OAK HOLDINGS, LLC**

_____          _____
Signature                                                                    Date

Name: _____

Title: _____

**DANIEL BARNES**

_____          _____
Signature                                                                    Date

Name: _____

Title: _____

**SPIRITED COCKTAILS CORPORATION**

_____          _____
Signature                                                                    Date

Name: _____

Title: _____

**BRANDON CASON**

_____          _____
Signature                                                                    Date

Name: _____

Title: _____

# EXHIBIT 9

| | |
|---|---|
| **From:** | Jeffrey Theodore |
| **To:** | Kornfield, Susan; Bagdady, Justin |
| **Cc:** | Noah Hagey; Schneider, Heather; Ryan Botkin |
| **Subject:** | Waterloo v Treaty Oak et al - Stipulated Injunction |
| **Date:** | Monday, March 29, 2021 4:56:00 PM |
| **Attachments:** | Waterloo v Treaty Oak et al - Stipulated Injunction.docx |

Susan,

We have had a chance to discuss your revised draft stipulated injunction with our client.

Unfortunately, your document is not consistent with the representations that were made by Mr. Bagdady in response to our filing suit and on the basis of which we refrained from seeking injunctive relief. Mr. Bagdady represented on February 19, 2021, that Treaty Oak would not manufacture any alcoholic seltzer product until this matter is resolved, as memorialized in my email of the same day. By contrast, your injunction promises only to refrain from selling a "WATERLOO NO. 9 GIN SPRITZ" (which term is undefined) in the exact packaging identified in our Complaint and demand letters. This does not provide Waterloo meaningful protection against another attempt to misappropriate its brand and goodwill and allows your client to market an only slightly revised infringing product without notice.

This bait and switch is not confidence inducing and only underscores the need for preliminary injunctive relief. Nonetheless, in an effort to avoid burdening the Court with briefing while ensuring that there is no further infringement, we have attached a revised stipulated preliminary injunction that requires Treaty Oak to provide 120 days' notice before it proceeds with any alcoholic seltzer product that uses the Waterloo name during the pendency of this litigation. Given your representations that neither Defendant has any such present plan, this should not impinge on any rights you may claim to have while providing Waterloo confidence that it will not be sandbagged by an infringing product without an opportunity to seek emergency relief. Our revised draft also removes the inaccurate and tendentious narrative that you inserted.

Let us know if your client has any objections to this relief.

Regards,

Jeff

Jeffrey M. Theodore

**B R A U N** H A G E Y **& B O R D E N** LLP

Direct:  (415) 599-0219

**San Francisco (Main Office)**

351 California Street, 10th Floor

San Francisco, CA 94104

Tel. & Fax: (415) 599-0210

**New York**

7 Times Square

27th Floor

New York, NY 10036-6524

Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| WATERLOO SPARKLING WATER CORP., | § | Civil Action No. 1:21-CV-161-RP |
| | § | |
| Plaintiff, | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | |
| TREATY OAK BREWING AND DISTILLING CO., LLC, TREATY OAK BRANDS, LLC, TREATY OAK OPERATIONS, LLC, TREATY OAK HOLDINGS, LLC, SPIRITED COCKTAILS CORPORATION, DANIEL BARNES, and BRANDON CASON, | § | |
| | § | |
| Defendants. | § | |

## JOINT AGREED PRELIMINARY INJUNCTION ORDER

Plaintiff Waterloo Sparkling Water Corp. ("Plaintiff") and Defendants Treaty Oak Brewing and Distilling Co., LLC, Treaty Oak Brands, LLC, Treaty Oak Operations, LLC, Treaty Oak Holdings, LLC (collectively, "Treaty Oak") appearing through and represented by undersigned counsel, hereby stipulate to the following Joint [Proposed] Preliminary Injunction Order:

**WHEREAS**, on February 17, 2021 Plaintiff filed this action for trademark infringement, false designation of origin, trade dress infringement, unfair competition, declaratory relief, and unjust enrichment under federal and state law (the "Action").

**WHEREAS,** Plaintiff is the owner of the federally registered mark WATERLOO SPARKLING WATER and Design (U.S. Reg. No. 5356607) and claims associated common law trademark rights in the term WATERLOO.  Plaintiff has used the following trade dress in connection with the sale of its products, as illustrated below:



**WHEREAS**, Defendant Treaty Oak Brewing and Distilling, LLC is the owner of a federally registered mark WATERLOO NO. 9 GIN (U.S. Reg. No. 6,003,279) for "spirits".

**WHEREAS**, Treaty Oak, in concert with the other Defendants to the Action (together "Defendants" or, individually, each a "Defendant"), developed, marketed, promoted, and sought to launch a WATERLOO NO. 9 GIN SPRITZ in a ready-to-drink can using the packaging below:

  

**WHEREAS**, the parties dispute certain facts regarding Defendants' development and marketing of the WATERLOO NO. 9 GIN SPRITZ product.

**WHEREAS,** Plaintiff notified Defendants of its intention to seek a formal preliminary injunction to enjoin production, sale, or marketing of the WATERLOO NO. 9 GIN SPRITZ product or any related beverage product infringing or resembling the Waterloo Trade Dress.

**WHEREAS**, each Defendant represented that it would immediately halt, cease and desist any promotion, marketing, sale or distribution of the WATERLOO NO. 9 GIN SPRITZ product. Defendants also represented to Plaintiff that there had been no sales of the WATERLOO NO. 9

GIN SPRITZ product and that they agreed not to sell the WATERLOO NO. 9 GIN SPRITZ product.

**WHEREAS,** the Plaintiff and Treaty Oak seek to memorialize Treaty Oak's representations into a binding order without prejudice to or waiver of any party's claims, defenses, arguments or positions in the litigation itself.

**WHEREAS**, this Court has authority to issue a preliminary injunction pursuant to Fed. R. Civ. P. 65 and The U.S. Trademark Act, 15 U.S.C. §§ 1051, 1125(a).

**NOW THEREFORE**, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1.     Treaty Oak and its officers, directors, employees, agents, corporate parents, equity and security holders, subsidiaries, affiliates, and distributors are restrained and enjoined during the pendency of this action from directly or indirectly marketing, promoting, selling, offering, distributing, manufacturing, purchasing, importing, advertising, or otherwise republishing the WATERLOO NO. 9 GIN SPRITZ product.  In the event Treaty Oak or any of its officers, directors, employees, agents, corporate parents, equity and security holders, subsidiaries, affiliates, or distributors seeks to manufacture, market, promote, sell, or otherwise launch a ready-to-drink beverage product prominently bearing the WATERLOO name on the front of its label, it shall first provide 120 (one-hundred-and-twenty) days written notice to Plaintiff.

2.     Treaty Oak shall confirm to Plaintiff that the Defendants have removed all promotions, marketing and/or advertisements for the WATERLOO NO. 9 GIN SPRITZ product using the packaging set forth above from any and all websites, promotional decks, advertisements, stores, events, and other advertising locations within their direct or indirect control and shall refrain from such advertising during the pendency of this lawsuit.

3.      Treaty Oak shall provide Plaintiff the name and contact information (if known) of each person who received or made any communication, document or thing regarding the WATERLOO NO. 9 GIN SPRITZ product, and the date such event(s) occurred.

4.      Within five (5) business days following the entry of this Order, Treaty Oak shall serve notice on Plaintiff certifying Treaty Oak's compliance with all terms of the Order.

5.      This Preliminary Injunction shall remain in force and effect through and until a final judgment in this litigation, or upon good cause by the Court upon properly noticed motion by an interested party hereto.

6.      The Court shall retain jurisdiction over the subject matter and the parties to enforce the terms of this Preliminary Injunction.

**IT IS SO ORDERED.**

Dated:  _____

_____
The Honorable Robert Pitman
United States District Judge

**SO STIPULATED AND AGREED.**

**WATERLOO SPARKLING WATER CORP.**

_____          _____
Signature                                                                        Date

Name: _____

Title:   _____

**TREATY OAK BREWING AND DISTILLING CO., LLC**

_____          _____
Signature                                                                        Date

Name: _____

Title:   _____

**TREATY OAK BRANDS, LLC**

_____          _____
Signature                                                                        Date

Name: _____

Title:   _____

**TREATY OAK OPERATIONS, LLC**

_____          _____
Signature                                                                        Date

Name: _____

Title:   _____

**TREATY OAK HOLDINGS, LLC**


_____          _____
Signature                                                                          Date

Name: _____

Title: _____

# EXHIBIT 10

| | |
|---|---|
| **From:** | Kornfield, Susan |
| **To:** | Jeffrey Theodore; Bagdady, Justin |
| **Cc:** | Noah Hagey; Schneider, Heather; Ryan Botkin |
| **Subject:** | RE: Waterloo v Treaty Oak et al - Stipulated Injunction |
| **Date:** | Monday, March 29, 2021 5:40:43 PM |

Please see earlier correspondence.  Your email is - how shall we say it -- detached from reality.


Susan M. Kornfield
Also Admitted in Illinois
BODMAN PLC
Suite 400
201 South Division Street
Ann Arbor, Michigan 48104
office: 734-930-2488
email: skornfield@bodmanlaw.com
My biography on bodmanlaw.com
Pronouns:  she/her/hers


Bodman is a Corp! Magazine
"Diversity-Focused Company"

---

**From:** Jeffrey Theodore [Theodore@braunhagey.com]
**Sent:** Monday, March 29, 2021 7:56 PM
**To:** Kornfield, Susan; Bagdady, Justin
**Cc:** Noah Hagey; Schneider, Heather; Ryan Botkin
**Subject:** Waterloo v Treaty Oak et al - Stipulated Injunction

Susan,

We have had a chance to discuss your revised draft stipulated injunction with our client.

Unfortunately, your document is not consistent with the representations that were made by Mr. Bagdady in response to our filing suit and on the basis of which we refrained from seeking injunctive relief. Mr. Bagdady represented on February 19, 2021, that Treaty Oak would not manufacture any alcoholic seltzer product until this matter is resolved, as memorialized in my email of the same day. By contrast, your injunction promises only to refrain from selling a "WATERLOO NO. 9 GIN SPRITZ" (which term is undefined) in the exact packaging identified in our Complaint and demand letters. This does not provide Waterloo meaningful protection against another attempt to misappropriate its brand and goodwill and allows your client to market an only slightly revised infringing product without notice.

This bait and switch is not confidence inducing and only underscores the need for preliminary injunctive relief. Nonetheless, in an effort to avoid burdening the Court with briefing while ensuring that there is no further infringement, we have attached a revised stipulated preliminary injunction that requires Treaty Oak to provide 120 days' notice before it proceeds with any alcoholic seltzer product that uses the Waterloo name during the pendency of this litigation. Given your representations that neither Defendant has any such present plan, this should not impinge on any

rights you may claim to have while providing Waterloo confidence that it will not be sandbagged by an infringing product without an opportunity to seek emergency relief. Our revised draft also removes the inaccurate and tendentious narrative that you inserted.

Let us know if your client has any objections to this relief.

Regards,

Jeff


Jeffrey M. Theodore

**B R A U N H A G E Y & B O R D E N** LLP

Direct:  (415) 599-0219

**San Francisco (Main Office)**

351 California Street, 10th Floor

San Francisco, CA 94104

Tel. & Fax: (415) 599-0210

**New York**

7 Times Square

27th Floor

New York, NY 10036-6524

Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

# EXHIBIT 11

**From:**       Bagdady, Justin
**To:**         Jeffrey Theodore; Kornfield, Susan
**Cc:**         Noah Hagey; Schneider, Heather; Ryan Botkin
**Subject:**    RE: Waterloo v Treaty Oak et al - Stipulated Injunction
**Date:**       Wednesday, April 7, 2021 12:45:54 PM
**Attachments:** Waterloo v Treaty Oak et al - Stipulated Injunction 4.7.21.docx

Jeff,

We appreciate the efforts towards moving this matter to a resolution.  We have had a chance to discuss with our clients and they are willing to enter into the attached stipulated preliminary injunction order.

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Monday, March 29, 2021 7:56 PM
**To:** Kornfield, Susan <SKornfield@BODMANLAW.COM>; Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** Waterloo v Treaty Oak et al - Stipulated Injunction

Susan,

We have had a chance to discuss your revised draft stipulated injunction with our client.

Unfortunately, your document is not consistent with the representations that were made by Mr. Bagdady in response to our filing suit and on the basis of which we refrained from seeking injunctive relief. Mr. Bagdady represented on February 19, 2021, that Treaty Oak would not manufacture any alcoholic seltzer product until this matter is resolved, as memorialized in my email of the same day. By contrast, your injunction promises only to refrain from selling a "WATERLOO NO. 9 GIN SPRITZ" (which term is undefined) in the exact packaging identified in our Complaint and demand letters. This does not provide Waterloo meaningful protection against another attempt to misappropriate its brand and goodwill and allows your client to market an only slightly revised infringing product without notice.

This bait and switch is not confidence inducing and only underscores the need for preliminary injunctive relief. Nonetheless, in an effort to avoid burdening the Court with briefing while ensuring that there is no further infringement, we have attached a revised stipulated preliminary injunction that requires Treaty Oak to provide 120 days' notice before it proceeds with any alcoholic seltzer

product that uses the Waterloo name during the pendency of this litigation. Given your representations that neither Defendant has any such present plan, this should not impinge on any rights you may claim to have while providing Waterloo confidence that it will not be sandbagged by an infringing product without an opportunity to seek emergency relief. Our revised draft also removes the inaccurate and tendentious narrative that you inserted.

Let us know if your client has any objections to this relief.

Regards,

Jeff

Jeffrey M. Theodore

**BRAUNHAGEY & BORDEN** LLP

Direct:  (415) 599-0219

**San Francisco (Main Office)**

351 California Street, 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**

7 Times Square
27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| WATERLOO SPARKLING WATER CORP., | § § § | Civil Action No. 1:21-CV-161-RP |
| Plaintiff, | § § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| TREATY OAK BREWING AND DISTILLING CO., LLC, TREATY OAK BRANDS, LLC, TREATY OAK OPERATIONS, LLC, TREATY OAK HOLDINGS, LLC, SPIRITED COCKTAILS CORPORATION, DANIEL BARNES, and BRANDON CASON, | § § § § § § § § § | |
| Defendants. | § § § | |

## JOINT AGREED PRELIMINARY INJUNCTION ORDER

Plaintiff Waterloo Sparkling Water Corp. ("Plaintiff") and Defendants Treaty Oak Brewing and Distilling Co., LLC, Treaty Oak Brands, LLC, Treaty Oak Operations, LLC, Treaty Oak Holdings, LLC (collectively, "Treaty Oak") appearing through and represented by undersigned counsel, hereby stipulate to the following Joint [Proposed] Preliminary Injunction Order:

**WHEREAS**, on February 17, 2021 Plaintiff filed this action for trademark infringement, false designation of origin, trade dress infringement, unfair competition, declaratory relief, and unjust enrichment under federal and state law (the "Action").

**WHEREAS,** Plaintiff is the owner of the federally registered mark



(U.S. Reg. No. 5356607) for "sparkling water" and claims to

have common law trademark rights in the term WATERLOO.  Plaintiff has used the following unregistered trade dress in connection with the sale of its products, as illustrated below ("Waterloo Sparkling Water Trade Dress"):



**WHEREAS**, Defendant Treaty Oak Brewing and Distilling, LLC is the owner of a federally registered mark WATERLOO NO. 9 GIN (U.S. Reg. No. 6,003,279) for "spirits," has used the WATERLOO NO. 9 Mark since 2011, and claims common law rights in the term WATERLOO and in design elements used on its product labels and packaging.

**WHEREAS**, Plaintiff contends that the Defendants to this Action developed, marketed, promoted, and sought to launch a ready-to-drink "gin spritz" product in a can under the name WATERLOO NO. 9 GIN SPRITZ using the packaging below (the "Gin Spritz Proposed Packaging"):

  

**WHEREAS**, the parties dispute certain facts regarding the development and marketing of the proposed WATERLOO NO. 9 GIN SPRITZ product using the "Gin Spritz Proposed Packaging" and Treaty Oak denies any and all liability.

**WHEREAS,** Plaintiff notified Defendants of its intention to seek a formal preliminary injunction to enjoin production, sale, or marketing of the gin spritz product in the "Gin Spritz Proposed Packaging" or any beverage product that Plaintiff contends infringes its registered mark No. 5356607 or resembling what it contends to be a protectable trade dress.

**WHEREAS**, Treaty Oak represented that it would immediately halt, cease and desist any promotion, marketing, sale or distribution of the gin spritz product in the "Gin Spritz Proposed Packaging". Treaty Oak also represented to Plaintiff that there had been no sales of the gin spritz product in the "Gin Spritz Proposed Packaging" and that they agreed not to do so in the future.

**WHEREAS**, this Court has authority to issue this agreed preliminary injunction pursuant to Fed. R. Civ. P. 65 and The U.S. Trademark Act, 15 U.S.C. §§ 1051, 1125(a).

**NOW THEREFORE**, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1.      Treaty Oak agrees that it and its officers, directors, employees, agents, subsidiaries, and affiliates are restrained and enjoined during the pendency of this action from directly or indirectly marketing, promoting, selling, offering, distributing, manufacturing, purchasing, importing, advertising, or otherwise republishing the "Gin Spritz Proposed Packaging" or any packaging that is confusingly similar to the Waterloo Sparkling Water Trade Dress.

2.      Treaty Oak agrees that it will confirm to Plaintiff that it has removed all promotions, marketing and/or advertisements for the WATERLOO NO. 9 gin spritz product using the "Gin Spritz Proposed Packaging" from any and all websites, promotional decks, advertisements, stores, events, and other advertising locations within their direct or indirect control and shall refrain from such advertising during the pendency of this lawsuit.

3.      Within five (5) business days following the entry of this Order, Treaty Oak shall serve notice on Plaintiff certifying Treaty Oak's compliance with all terms of the Order.

4.      This Preliminary Injunction shall remain in force and effect through and until a final judgment in this litigation, or upon good cause by the Court upon properly noticed motion by an interested party hereto.

5.      The Court shall retain jurisdiction during the pendency of this litigation over the subject matter and the parties to enforce the terms of this Preliminary Injunction.

**IT IS SO ORDERED.**

Dated:  _____

                                    _____
                                    The Honorable Robert Pitman
                                    United States District Judge

**SO STIPULATED AND AGREED.**

**WATERLOO SPARKLING WATER CORP.**

_____          _____
Signature                                          Date

Name: _____

Title: _____

**TREATY OAK BREWING AND DISTILLING CO., LLC**

_____          _____
Signature                                          Date

Name: _____

Title: _____

**TREATY OAK BRANDS, LLC**

_____          _____
Signature                                          Date

Name: _____

Title: _____

**TREATY OAK OPERATIONS, LLC**

_____          _____
Signature                                          Date

Name: _____

Title: _____

**TREATY OAK HOLDINGS, LLC**


_____          _____
Signature                                                      Date

Name: _____

Title:   _____

# EXHIBIT 12

| | |
|---|---|
| **From:** | Jeffrey Theodore |
| **To:** | Bagdady, Justin; Kornfield, Susan |
| **Cc:** | Noah Hagey; Schneider, Heather; Ryan Botkin |
| **Subject:** | RE: Waterloo v Treaty Oak et al - Stipulated Injunction |
| **Date:** | Friday, April 9, 2021 3:14:00 PM |

Justin,

Just left you a voice message. Give me a call when you have a chance. 617 823 8514. Would like to discuss your revisions as well as case status, scheduling, and next steps if we are unable to reach agreement on language.

Thanks,

Jeff

Jeffrey M. Theodore
**B R A U N H A G E Y & B O R D E N** LLP
Direct:  (415) 599-0219

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Wednesday, April 7, 2021 12:46 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Jeff,

We appreciate the efforts towards moving this matter to a resolution.  We have had a chance to discuss with our clients and they are willing to enter into the attached stipulated preliminary injunction order.

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM


ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>

**Sent:** Monday, March 29, 2021 7:56 PM
**To:** Kornfield, Susan <SKornfield@BODMANLAW.COM>; Bagdady, Justin
<JBagdady@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>
**Subject:** Waterloo v Treaty Oak et al - Stipulated Injunction

Susan,

We have had a chance to discuss your revised draft stipulated injunction with our client.

Unfortunately, your document is not consistent with the representations that were made by Mr.
Bagdady in response to our filing suit and on the basis of which we refrained from seeking injunctive
relief. Mr. Bagdady represented on February 19, 2021, that Treaty Oak would not manufacture any
alcoholic seltzer product until this matter is resolved, as memorialized in my email of the same day.
By contrast, your injunction promises only to refrain from selling a "WATERLOO NO. 9 GIN SPRITZ"
(which term is undefined) in the exact packaging identified in our Complaint and demand letters.
This does not provide Waterloo meaningful protection against another attempt to misappropriate its
brand and goodwill and allows your client to market an only slightly revised infringing product
without notice.

This bait and switch is not confidence inducing and only underscores the need for preliminary
injunctive relief. Nonetheless, in an effort to avoid burdening the Court with briefing while ensuring
that there is no further infringement, we have attached a revised stipulated preliminary injunction
that requires Treaty Oak to provide 120 days' notice before it proceeds with any alcoholic seltzer
product that uses the Waterloo name during the pendency of this litigation. Given your
representations that neither Defendant has any such present plan, this should not impinge on any
rights you may claim to have while providing Waterloo confidence that it will not be sandbagged by
an infringing product without an opportunity to seek emergency relief. Our revised draft also
removes the inaccurate and tendentious narrative that you inserted.

Let us know if your client has any objections to this relief.

Regards,

Jeff



Jeffrey M. Theodore
B R A U N H A G E Y  &  B O R D E N  LLP
Direct:  (415) 599-0219

**San Francisco (Main Office)**
351 California Street, 10th Floor
San Francisco, CA 94104

Tel. & Fax: (415) 599-0210

**New York**
7 Times Square
27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

# EXHIBIT 13

| | |
|---|---|
| **From:** | Jeffrey Theodore |
| **To:** | Schneider, Heather; "Bagdady, Justin"; Kornfield, Susan |
| **Cc:** | Noah Hagey; Ryan Botkin |
| **Subject:** | RE: Waterloo v Treaty Oak et al - Stipulated Injunction |
| **Date:** | Monday, April 12, 2021 9:15:00 PM |
| **Attachments:** | Waterloo v Treaty Oak et al - Stipulated Injunction 4.12.21 (002).docx |

Justin,

Thanks and look forward to speaking tomorrow. Let's do 4 pm ET. We will send a dial in.

In the interim, please find attached a further redline of the PI. We think that we have made progress, but we do need a reasonable notice period in the event that your client is going to launch a Waterloo branded RTD product. Our hope is that this should not be a major issue given the pending litigation and that we had understood there were no immediate plans to do so.

Jeff


Jeffrey M. Theodore

**B R A U N H A G E Y & B O R D E N** LLP
Direct: (415) 599-0219

---

**From:** Schneider, Heather <HSchneider@willkie.com>
**Sent:** Monday, April 12, 2021 1:11 PM
**To:** 'Bagdady, Justin' <JBagdady@BODMANLAW.COM>; Jeffrey Theodore
<Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

I could speak tomorrow from 3-4 ET.


Sincerely,
Heather


**Heather M. Schneider**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8685 | Fax: +1 212 728 9685
hschneider@willkie.com | vCard | www.willkie.com bio

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Monday, April 12, 2021 3:53 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan
<SKornfield@BODMANLAW.COM>

**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

| *** EXTERNAL EMAIL *** |
|---|

How is tomorrow afternoon between 3-5 pm Eastern?  Susan and I are available for a call
then.

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Friday, April 9, 2021 6:15 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Kornfield, Susan
<SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Justin,

Just left you a voice message. Give me a call when you have a chance. 617 823 8514. Would like to
discuss your revisions as well as case status, scheduling, and next steps if we are unable to reach
agreement on language.

Thanks,

Jeff

Jeffrey M. Theodore
BRAUNHAGEY & BORDEN LLP
Direct:  (415) 599-0219

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Wednesday, April 7, 2021 12:46 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan

<SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Jeff,

We appreciate the efforts towards moving this matter to a resolution.  We have had a chance to
discuss with our clients and they are willing to enter into the attached stipulated preliminary
injunction order.

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Monday, March 29, 2021 7:56 PM
**To:** Kornfield, Susan <SKornfield@BODMANLAW.COM>; Bagdady, Justin
<JBagdady@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>
**Subject:** Waterloo v Treaty Oak et al - Stipulated Injunction

Susan,

We have had a chance to discuss your revised draft stipulated injunction with our client.

Unfortunately, your document is not consistent with the representations that were made by Mr.
Bagdady in response to our filing suit and on the basis of which we refrained from seeking injunctive
relief. Mr. Bagdady represented on February 19, 2021, that Treaty Oak would not manufacture any
alcoholic seltzer product until this matter is resolved, as memorialized in my email of the same day.
By contrast, your injunction promises only to refrain from selling a "WATERLOO NO. 9 GIN SPRITZ"
(which term is undefined) in the exact packaging identified in our Complaint and demand letters.
This does not provide Waterloo meaningful protection against another attempt to misappropriate its
brand and goodwill and allows your client to market an only slightly revised infringing product
without notice.

This bait and switch is not confidence inducing and only underscores the need for preliminary
injunctive relief. Nonetheless, in an effort to avoid burdening the Court with briefing while ensuring
that there is no further infringement, we have attached a revised stipulated preliminary injunction
that requires Treaty Oak to provide 120 days' notice before it proceeds with any alcoholic seltzer

product that uses the Waterloo name during the pendency of this litigation. Given your representations that neither Defendant has any such present plan, this should not impinge on any rights you may claim to have while providing Waterloo confidence that it will not be sandbagged by an infringing product without an opportunity to seek emergency relief. Our revised draft also removes the inaccurate and tendentious narrative that you inserted.

Let us know if your client has any objections to this relief.

Regards,

Jeff



Jeffrey M. Theodore
**BRAUNHAGEY & BORDEN** LLP
Direct:  (415) 599-0219

**San Francisco (Main Office)**

351 California Street, 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**
7 Times Square
27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| WATERLOO SPARKLING WATER CORP., | § § § | Civil Action No. 1:21-CV-161-RP |
| Plaintiff, | § § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| TREATY OAK BREWING AND DISTILLING CO., LLC, TREATY OAK BRANDS, LLC, TREATY OAK OPERATIONS, LLC, TREATY OAK HOLDINGS, LLC, SPIRITED COCKTAILS CORPORATION, DANIEL BARNES, and BRANDON CASON, | § § § § § § § § § | |
| Defendants. | § § | |

<u>**JOINT AGREED PRELIMINARY INJUNCTION ORDER**</u>

Plaintiff Waterloo Sparkling Water Corp. ("Plaintiff") and Defendants Treaty Oak Brewing and Distilling Co., LLC, Treaty Oak Brands, LLC, Treaty Oak Operations, LLC, Treaty Oak Holdings, LLC (collectively, "Treaty Oak") appearing through and represented by undersigned counsel, hereby stipulate to the following Joint [Proposed] Preliminary Injunction Order:

**WHEREAS**, on February 17, 2021 Plaintiff filed this action for trademark infringement, false designation of origin, trade dress infringement, unfair competition, declaratory relief, and unjust enrichment under federal and state law (the "Action").

**WHEREAS,** Plaintiff is the owner of the federally registered mark <u>WATERLOO</u> <u>SPARKLING WATER and Design</u>  (U.S. Reg. No. 5356607) for "sparkling water" and claims ~~to have~~ common law trademark rights in the term WATERLOO.  Plaintiff has

used the following ~~unregistered~~ trade dress in connection with the sale of its products, as illustrated below ("Waterloo Sparkling Water Trade Dress"):



**WHEREAS**, Defendant Treaty Oak Brewing and Distilling, LLC is the owner of a federally registered mark WATERLOO NO. 9 GIN (U.S. Reg. No. 6,003,279) for "spirits~~,~~" ~~has used the WATERLOO NO. 9 Mark since 2011,~~ and claims common law rights in the term WATERLOO and in design elements used on its product labels and packaging.

**WHEREAS**, Plaintiff contends that the Defendants to this Action (together, "Defendants" or, individually, each a "Defendant") developed, marketed, promoted, and sought to launch a ready-to-drink "gin spritz" product in a can under the name WATERLOO NO. 9 GIN SPRITZ using the packaging below (the "Gin Spritz Proposed Packaging"):

  

**WHEREAS**, the parties dispute certain facts regarding the development and marketing of the proposed WATERLOO NO. 9 GIN SPRITZ product using the "Gin Spritz Proposed Packaging" and Treaty Oak denies any and all liability.

**WHEREAS,** Plaintiff notified Defendants of its intention to seek a formal preliminary injunction to enjoin production, sale, or marketing of the gin spritz product in the "Gin Spritz

Proposed Packaging" ~~or~~ and any related beverage product that Plaintiff contends infringes its ~~registered mark No. 5356607 or resembling what it contends to be a protectable trade dress~~trademark or trade dress rights.

**WHEREAS**, Treaty Oak represented that it would immediately halt, cease and desist any promotion, marketing, sale or distribution of the gin spritz product in the "Gin Spritz Proposed Packaging". Treaty Oak also represented to Plaintiff that there had been no sales of the gin spritz product in the "Gin Spritz Proposed Packaging" and that they agreed not to do so in the future.

**WHEREAS**, this Court has authority to issue this agreed preliminary injunction pursuant to Fed. R. Civ. P. 65 and The U.S. Trademark Act, 15 U.S.C. §§ 1051, 1125(a).

**NOW THEREFORE**, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1.      Treaty Oak agrees that it and ~~its~~ its officers, directors, employees, agents, parents, owners, subsidiaries, and affiliates are restrained and enjoined during the pendency of this action from directly or indirectly marketing, promoting, selling, offering, distributing, manufacturing, purchasing, importing, advertising, or otherwise republishing the "Gin Spritz Proposed Packaging" or any packaging that is confusingly similar to the Waterloo Sparkling Water Trade Dress. In the event Treaty Oak or any of its officers, directors, employees, agents, parents, owners, subsidiaries, affiliates, or distributors seeks to manufacture, market, promote, sell, or otherwise launch a ready-to-drink beverage product prominently bearing the term "WATERLOO" on the front of its label, it shall first provide ninety (90) days written notice to Plaintiff.

2.      Treaty Oak agrees that it will confirm to Plaintiff that it has removed all promotions, marketing and/or advertisements for the WATERLOO NO. 9 gin spritz product using the "Gin Spritz Proposed Packaging" from any and all websites, promotional decks, advertisements, stores, events, and other advertising locations within their direct or indirect control and shall refrain from such advertising during the pendency of this lawsuit.

2.3.     Treaty Oak shall provide Plaintiff the name and contact information of each person or entity to whom Treaty Oak or its agents or distributors marketed the WATERLOO NO. 9 gin spritz product, and the date such event(s) occurred.

3.4.     Within five (5) business days following the entry of this Order, Treaty Oak shall serve notice on Plaintiff certifying Treaty Oak's compliance with all terms of the Order.

4.5.     This Preliminary Injunction shall remain in force and effect through and until a final judgment in this litigation, or upon good cause by the Court upon properly noticed motion by an interested party hereto.

5.6.     The Court shall retain jurisdiction during the pendency of this litigation over the subject matter and the parties to enforce the terms of this Preliminary Injunction.

**IT IS SO ORDERED.**

Dated:   _____

_____
The Honorable Robert Pitman
United States District Judge

**SO STIPULATED AND AGREED.**

**WATERLOO SPARKLING WATER CORP.**

_____          _____
Signature                                                          Date

Name: _____

Title:  _____

**TREATY OAK BREWING AND DISTILLING CO., LLC**

_____          _____
Signature                                                          Date

Name: _____

Title:  _____

**TREATY OAK BRANDS, LLC**

_____          _____
Signature                                                          Date

Name: _____

Title:  _____

**TREATY OAK OPERATIONS, LLC**

_____          _____
Signature                                                          Date

Name: _____

Title:  _____

**TREATY OAK HOLDINGS, LLC**

| | |
|---|---|
| _____ | _____ |
| Signature | Date |

Name: _____

Title: _____

# EXHIBIT 14

| | |
|---|---|
| **From:** | Jeffrey Theodore |
| **To:** | Schneider, Heather; "Bagdady, Justin"; Kornfield, Susan |
| **Cc:** | Noah Hagey; Ryan Botkin |
| **Subject:** | RE: Waterloo v Treaty Oak et al - Stipulated Injunction |
| **Date:** | Wednesday, April 14, 2021 11:08:00 AM |

Justin,

Thanks for chatting yesterday and agreeing to get back to us with a revision to the stipulated PI sent below. As I mentioned on the call, we would appreciate an expeditious turnaround so that we can come to an agreement or know that we will need to move promptly for a PI if an agreement is not forthcoming. A couple of follow up thoughts:

1. I appreciate your expression of openness to the notice concept. Regarding your suggestion of a cap on the time period, I would just re-emphasize that we are asking for an injunction that would only operate during the pendency of the litigation.
2. We are not interested in agreeing to an injunction against Waterloo Sparkling Water: there has been no attempt at or threat of infringement from our side, and there is no likelihood that we would attempt to use Treaty Oak's WATERLOO NO. 9 GIN mark, even putting aside the fact that it is the junior mark in terms of priority.
3. As I mentioned on the call, we would like to discuss an agreed schedule for PI briefing in the event that we cannot come to an agreement; that will save the need for motion practice re shortening time.

Thanks,

Jeff

Jeffrey M. Theodore

**BRAUNHAGEY & BORDEN** LLP
Direct:  (415) 599-0219

---

**From:** Jeffrey Theodore
**Sent:** Monday, April 12, 2021 9:16 PM
**To:** Schneider, Heather <HSchneider@willkie.com>; 'Bagdady, Justin' <JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Justin,

Thanks and look forward to speaking tomorrow. Let's do 4 pm ET. We will send a dial in.

In the interim, please find attached a further redline of the PI. We think that we have made progress,

but we do need a reasonable notice period in the event that your client is going to launch a Waterloo branded RTD product. Our hope is that this should not be a major issue given the pending litigation and that we had understood there were no immediate plans to do so.

Jeff

Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N LLP
Direct: (415) 599-0219

---

**From:** Schneider, Heather <HSchneider@willkie.com>
**Sent:** Monday, April 12, 2021 1:11 PM
**To:** 'Bagdady, Justin' <JBagdady@BODMANLAW.COM>; Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

I could speak tomorrow from 3-4 ET.

Sincerely,
Heather


**Heather M. Schneider**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8685 | Fax: +1 212 728 9685
hschneider@willkie.com | vCard | www.willkie.com bio

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Monday, April 12, 2021 3:53 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

| *** EXTERNAL EMAIL *** |
| --- |

How is tomorrow afternoon between 3-5 pm Eastern?  Susan and I are available for a call then.


**Justin P. Bagdady**
734-930-2727

JBagdady@BODMANLAW.COM


ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Friday, April 9, 2021 6:15 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Justin,

Just left you a voice message. Give me a call when you have a chance. 617 823 8514. Would like to discuss your revisions as well as case status, scheduling, and next steps if we are unable to reach agreement on language.

Thanks,

Jeff



Jeffrey M. Theodore
**BRAUNHAGEY & BORDEN** LLP
Direct: (415) 599-0219

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Wednesday, April 7, 2021 12:46 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Jeff,

We appreciate the efforts towards moving this matter to a resolution.  We have had a chance to discuss with our clients and they are willing to enter into the attached stipulated preliminary injunction order.

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Monday, March 29, 2021 7:56 PM
**To:** Kornfield, Susan <SKornfield@BODMANLAW.COM>; Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** Waterloo v Treaty Oak et al - Stipulated Injunction

Susan,

We have had a chance to discuss your revised draft stipulated injunction with our client.

Unfortunately, your document is not consistent with the representations that were made by Mr. Bagdady in response to our filing suit and on the basis of which we refrained from seeking injunctive relief. Mr. Bagdady represented on February 19, 2021, that Treaty Oak would not manufacture any alcoholic seltzer product until this matter is resolved, as memorialized in my email of the same day. By contrast, your injunction promises only to refrain from selling a "WATERLOO NO. 9 GIN SPRITZ" (which term is undefined) in the exact packaging identified in our Complaint and demand letters. This does not provide Waterloo meaningful protection against another attempt to misappropriate its brand and goodwill and allows your client to market an only slightly revised infringing product without notice.

This bait and switch is not confidence inducing and only underscores the need for preliminary injunctive relief. Nonetheless, in an effort to avoid burdening the Court with briefing while ensuring that there is no further infringement, we have attached a revised stipulated preliminary injunction that requires Treaty Oak to provide 120 days' notice before it proceeds with any alcoholic seltzer product that uses the Waterloo name during the pendency of this litigation. Given your representations that neither Defendant has any such present plan, this should not impinge on any rights you may claim to have while providing Waterloo confidence that it will not be sandbagged by an infringing product without an opportunity to seek emergency relief. Our revised draft also removes the inaccurate and tendentious narrative that you inserted.

Let us know if your client has any objections to this relief.

Regards,

Jeff

Jeffrey M. Theodore

**B R A U N H A G E Y & B O R D E N** L L P

Direct:  (415) 599-0219

**San Francisco (Main Office)**

351 California Street, 10th Floor

San Francisco, CA 94104

Tel. & Fax: (415) 599-0210

**New York**

7 Times Square

27th Floor

New York, NY 10036-6524

Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

---

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# EXHIBIT 15

| | |
|---|---|
| **From:** | Jeffrey Theodore |
| **To:** | Bagdady, Justin |
| **Subject:** | RE: Waterloo v Treaty Oak et al - Stipulated Injunction |
| **Date:** | Friday, April 16, 2021 12:30:00 PM |

Justin,

Just tried you quickly. Wanted to see where we were on another turn of the PI and see if we could talk briefly offline to see if we can move this forward. I'm tied up in a hearing for the next few hours but available later this afternoon.

Thanks,

Jeff

Jeffrey M. Theodore
**B R A U N** H A G E Y **& B O R D E N** LLP
Direct:  (415) 599-0219

**From:** Jeffrey Theodore
**Sent:** Wednesday, April 14, 2021 11:09 AM
**To:** Schneider, Heather <HSchneider@willkie.com>; 'Bagdady, Justin'
<JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Justin,

Thanks for chatting yesterday and agreeing to get back to us with a revision to the stipulated PI sent below. As I mentioned on the call, we would appreciate an expeditious turnaround so that we can come to an agreement or know that we will need to move promptly for a PI if an agreement is not forthcoming. A couple of follow up thoughts:

1. I appreciate your expression of openness to the notice concept. Regarding your suggestion of a cap on the time period, I would just re-emphasize that we are asking for an injunction that would only operate during the pendency of the litigation.
2. We are not interested in agreeing to an injunction against Waterloo Sparkling Water: there has been no attempt at or threat of infringement from our side, and there is no likelihood that we would attempt to use Treaty Oak's WATERLOO NO. 9 GIN mark, even putting aside the fact that it is the junior mark in terms of priority.
3. As I mentioned on the call, we would like to discuss an agreed schedule for PI briefing in the event that we cannot come to an agreement; that will save the need for motion practice re shortening time.

Thanks,

Jeff

Jeffrey M. Theodore
**BRAUNHAGEY & BORDEN** LLP
Direct: (415) 599-0219

---

**From:** Jeffrey Theodore
**Sent:** Monday, April 12, 2021 9:16 PM
**To:** Schneider, Heather <HSchneider@willkie.com>; 'Bagdady, Justin'
<JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Justin,

Thanks and look forward to speaking tomorrow. Let's do 4 pm ET. We will send a dial in.

In the interim, please find attached a further redline of the PI. We think that we have made progress,
but we do need a reasonable notice period in the event that your client is going to launch a
Waterloo branded RTD product. Our hope is that this should not be a major issue given the pending
litigation and that we had understood there were no immediate plans to do so.

Jeff

Jeffrey M. Theodore
**BRAUNHAGEY & BORDEN** LLP
Direct: (415) 599-0219

---

**From:** Schneider, Heather <HSchneider@willkie.com>
**Sent:** Monday, April 12, 2021 1:11 PM
**To:** 'Bagdady, Justin' <JBagdady@BODMANLAW.COM>; Jeffrey Theodore
<Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

I could speak tomorrow from 3-4 ET.

Sincerely,
Heather

**Heather M. Schneider**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8685 | Fax: +1 212 728 9685
hschneider@willkie.com | vCard | www.willkie.com bio

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Monday, April 12, 2021 3:53 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

> ### *** EXTERNAL EMAIL ***

How is tomorrow afternoon between 3-5 pm Eastern?  Susan and I are available for a call then.


**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Friday, April 9, 2021 6:15 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Justin,

Just left you a voice message. Give me a call when you have a chance. 617 823 8514. Would like to discuss your revisions as well as case status, scheduling, and next steps if we are unable to reach agreement on language.

Thanks,

Jeff

Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N LLP
Direct: (415) 599-0219

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Wednesday, April 7, 2021 12:46 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Jeff,

We appreciate the efforts towards moving this matter to a resolution.  We have had a chance to discuss with our clients and they are willing to enter into the attached stipulated preliminary injunction order.

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM


ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Monday, March 29, 2021 7:56 PM
**To:** Kornfield, Susan <SKornfield@BODMANLAW.COM>; Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** Waterloo v Treaty Oak et al - Stipulated Injunction

Susan,

We have had a chance to discuss your revised draft stipulated injunction with our client.

Unfortunately, your document is not consistent with the representations that were made by Mr. Bagdady in response to our filing suit and on the basis of which we refrained from seeking injunctive relief. Mr. Bagdady represented on February 19, 2021, that Treaty Oak would not manufacture any alcoholic seltzer product until this matter is resolved, as memorialized in my email of the same day.

By contrast, your injunction promises only to refrain from selling a "WATERLOO NO. 9 GIN SPRITZ" (which term is undefined) in the exact packaging identified in our Complaint and demand letters. This does not provide Waterloo meaningful protection against another attempt to misappropriate its brand and goodwill and allows your client to market an only slightly revised infringing product without notice.

This bait and switch is not confidence inducing and only underscores the need for preliminary injunctive relief. Nonetheless, in an effort to avoid burdening the Court with briefing while ensuring that there is no further infringement, we have attached a revised stipulated preliminary injunction that requires Treaty Oak to provide 120 days' notice before it proceeds with any alcoholic seltzer product that uses the Waterloo name during the pendency of this litigation. Given your representations that neither Defendant has any such present plan, this should not impinge on any rights you may claim to have while providing Waterloo confidence that it will not be sandbagged by an infringing product without an opportunity to seek emergency relief. Our revised draft also removes the inaccurate and tendentious narrative that you inserted.

Let us know if your client has any objections to this relief.

Regards,

Jeff


Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N LLP
Direct:  (415) 599-0219

**San Francisco (Main Office)**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**
7 Times Square
27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# EXHIBIT 16

**From:**         <u>Bagdady, Justin</u>
**To:**              <u>Jeffrey Theodore</u>
**Subject:**     RE: Waterloo v Treaty Oak et al - Stipulated Injunction
**Date:**          Friday, April 16, 2021 3:36:44 PM

**\*\*\* EXTERNAL MESSAGE \*\*\***

Our client representatives are considering the proposal and discussing a couple different options.  We are working on it.

**Justin P. Bagdady**
734-930-2727
<u>JBagdady@BODMANLAW.COM</u>



ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Friday, April 16, 2021 3:31 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Justin,

Just tried you quickly. Wanted to see where we were on another turn of the PI and see if we could talk briefly offline to see if we can move this forward. I'm tied up in a hearing for the next few hours but available later this afternoon.

Thanks,

Jeff

Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N ʟʟᴘ
Direct:  (415) 599-0219

---

**From:** Jeffrey Theodore
**Sent:** Wednesday, April 14, 2021 11:09 AM
**To:** Schneider, Heather <<u>HSchneider@willkie.com</u>>; 'Bagdady, Justin' <<u>JBagdady@BODMANLAW.COM</u>>; Kornfield, Susan <<u>SKornfield@BODMANLAW.COM</u>>
**Cc:** Noah Hagey <<u>hagey@braunhagey.com</u>>; Ryan Botkin <<u>ryan@wittliffcutter.com</u>>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Justin,

Thanks for chatting yesterday and agreeing to get back to us with a revision to the stipulated PI sent below. As I mentioned on the call, we would appreciate an expeditious turnaround so that we can come to an agreement or know that we will need to move promptly for a PI if an agreement is not forthcoming. A couple of follow up thoughts:

1. I appreciate your expression of openness to the notice concept. Regarding your suggestion of a cap on the time period, I would just re-emphasize that we are asking for an injunction that would only operate during the pendency of the litigation.
2. We are not interested in agreeing to an injunction against Waterloo Sparkling Water: there has been no attempt at or threat of infringement from our side, and there is no likelihood that we would attempt to use Treaty Oak's WATERLOO NO. 9 GIN mark, even putting aside the fact that it is the junior mark in terms of priority.
3. As I mentioned on the call, we would like to discuss an agreed schedule for PI briefing in the event that we cannot come to an agreement; that will save the need for motion practice re shortening time.

Thanks,

Jeff


Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N LLP
Direct:  (415) 599-0219

---

**From:** Jeffrey Theodore
**Sent:** Monday, April 12, 2021 9:16 PM
**To:** Schneider, Heather <HSchneider@willkie.com>; 'Bagdady, Justin' <JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Justin,

Thanks and look forward to speaking tomorrow. Let's do 4 pm ET. We will send a dial in.

In the interim, please find attached a further redline of the PI. We think that we have made progress, but we do need a reasonable notice period in the event that your client is going to launch a Waterloo branded RTD product. Our hope is that this should not be a major issue given the pending litigation and that we had understood there were no immediate plans to do so.

Jeff

Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N LLP
Direct: (415) 599-0219

---

**From:** Schneider, Heather <HSchneider@willkie.com>
**Sent:** Monday, April 12, 2021 1:11 PM
**To:** 'Bagdady, Justin' <JBagdady@BODMANLAW.COM>; Jeffrey Theodore
<Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

I could speak tomorrow from 3-4 ET.

Sincerely,
Heather

**Heather M. Schneider**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8685 | Fax: +1 212 728 9685
hschneider@willkie.com | vCard | www.willkie.com bio

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Monday, April 12, 2021 3:53 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan
<SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

| *** EXTERNAL EMAIL *** |
| --- |

How is tomorrow afternoon between 3-5 pm Eastern?  Susan and I are available for a call
then.

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM


ATTORNEYS & COUNSELORS

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Friday, April 9, 2021 6:15 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Justin,

Just left you a voice message. Give me a call when you have a chance. 617 823 8514. Would like to discuss your revisions as well as case status, scheduling, and next steps if we are unable to reach agreement on language.

Thanks,

Jeff



Jeffrey M. Theodore
**B R A U N** H A G E Y **& B O R D E N** LLP
Direct:  (415) 599-0219

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Wednesday, April 7, 2021 12:46 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Jeff,

We appreciate the efforts towards moving this matter to a resolution.  We have had a chance to discuss with our clients and they are willing to enter into the attached stipulated preliminary injunction order.

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Monday, March 29, 2021 7:56 PM
**To:** Kornfield, Susan <SKornfield@BODMANLAW.COM>; Bagdady, Justin
<JBagdady@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>
**Subject:** Waterloo v Treaty Oak et al - Stipulated Injunction

Susan,

We have had a chance to discuss your revised draft stipulated injunction with our client.

Unfortunately, your document is not consistent with the representations that were made by Mr.
Bagdady in response to our filing suit and on the basis of which we refrained from seeking injunctive
relief. Mr. Bagdady represented on February 19, 2021, that Treaty Oak would not manufacture any
alcoholic seltzer product until this matter is resolved, as memorialized in my email of the same day.
By contrast, your injunction promises only to refrain from selling a "WATERLOO NO. 9 GIN SPRITZ"
(which term is undefined) in the exact packaging identified in our Complaint and demand letters.
This does not provide Waterloo meaningful protection against another attempt to misappropriate its
brand and goodwill and allows your client to market an only slightly revised infringing product
without notice.

This bait and switch is not confidence inducing and only underscores the need for preliminary
injunctive relief. Nonetheless, in an effort to avoid burdening the Court with briefing while ensuring
that there is no further infringement, we have attached a revised stipulated preliminary injunction
that requires Treaty Oak to provide 120 days' notice before it proceeds with any alcoholic seltzer
product that uses the Waterloo name during the pendency of this litigation. Given your
representations that neither Defendant has any such present plan, this should not impinge on any
rights you may claim to have while providing Waterloo confidence that it will not be sandbagged by
an infringing product without an opportunity to seek emergency relief. Our revised draft also
removes the inaccurate and tendentious narrative that you inserted.

Let us know if your client has any objections to this relief.

Regards,

Jeff

Jeffrey M. Theodore
**B R A U N H A G E Y   &   B O R D E N** LLP

Direct:  (415) 599-0219

**San Francisco (Main Office)**

351 California Street, 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**
7 Times Square
27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

---

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# EXHIBIT 17

| | |
|---|---|
| **From:** | Jeffrey Theodore |
| **To:** | Bagdady, Justin |
| **Subject:** | RE: Waterloo v Treaty Oak et al - Stipulated Injunction |
| **Date:** | Monday, April 19, 2021 12:39:00 PM |

Thanks Justin. Please let me know where we are on the PI. As I mentioned, I'm happy to discuss one on one. As I mentioned last week, If we're not going to be able to reach an agreement, would also be helpful to negotiate an agreed briefing scheduling.

Thanks,

Jeff


Jeffrey M. Theodore

B R A U N H A G E Y & B O R D E N LLP

Direct: (415) 599-0219

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Friday, April 16, 2021 3:37 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction


**\*\*\* EXTERNAL MESSAGE \*\*\***

Our client representatives are considering the proposal and discussing a couple different options. We are working on it.


**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Friday, April 16, 2021 3:31 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction


Justin,

Just tried you quickly. Wanted to see where we were on another turn of the PI and see if we could talk briefly offline to see if we can move this forward. I'm tied up in a hearing for the next few hours

but available later this afternoon.

Thanks,

Jeff


Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N L L P
Direct: (415) 599-0219

---

**From:** Jeffrey Theodore
**Sent:** Wednesday, April 14, 2021 11:09 AM
**To:** Schneider, Heather <HSchneider@willkie.com>; 'Bagdady, Justin'
<JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Justin,

Thanks for chatting yesterday and agreeing to get back to us with a revision to the stipulated PI sent
below. As I mentioned on the call, we would appreciate an expeditious turnaround so that we can
come to an agreement or know that we will need to move promptly for a PI if an agreement is not
forthcoming. A couple of follow up thoughts:

1. I appreciate your expression of openness to the notice concept. Regarding your suggestion of
   a cap on the time period, I would just re-emphasize that we are asking for an injunction that
   would only operate during the pendency of the litigation.
2. We are not interested in agreeing to an injunction against Waterloo Sparkling Water: there
   has been no attempt at or threat of infringement from our side, and there is no likelihood that
   we would attempt to use Treaty Oak's WATERLOO NO. 9 GIN mark, even putting aside the
   fact that it is the junior mark in terms of priority.
3. As I mentioned on the call, we would like to discuss an agreed schedule for PI briefing in the
   event that we cannot come to an agreement; that will save the need for motion practice re
   shortening time.

Thanks,

Jeff


Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N L L P
Direct: (415) 599-0219

**From:** Jeffrey Theodore
**Sent:** Monday, April 12, 2021 9:16 PM
**To:** Schneider, Heather <HSchneider@willkie.com>; 'Bagdady, Justin'
<JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Justin,

Thanks and look forward to speaking tomorrow. Let's do 4 pm ET. We will send a dial in.

In the interim, please find attached a further redline of the PI. We think that we have made progress,
but we do need a reasonable notice period in the event that your client is going to launch a
Waterloo branded RTD product. Our hope is that this should not be a major issue given the pending
litigation and that we had understood there were no immediate plans to do so.

Jeff

Jeffrey M. Theodore
**B R A U N** H A G E Y **& B O R D E N** LLP
Direct:  (415) 599-0219

**From:** Schneider, Heather <HSchneider@willkie.com>
**Sent:** Monday, April 12, 2021 1:11 PM
**To:** 'Bagdady, Justin' <JBagdady@BODMANLAW.COM>; Jeffrey Theodore
<Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

I could speak tomorrow from 3-4 ET.

Sincerely,
Heather

**Heather M. Schneider**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8685 | Fax: +1 212 728 9685
hschneider@willkie.com | vCard | www.willkie.com bio

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Monday, April 12, 2021 3:53 PM

**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

| *** EXTERNAL EMAIL *** |
| :---: |

How is tomorrow afternoon between 3-5 pm Eastern?  Susan and I are available for a call then.


**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Friday, April 9, 2021 6:15 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Justin,

Just left you a voice message. Give me a call when you have a chance. 617 823 8514. Would like to discuss your revisions as well as case status, scheduling, and next steps if we are unable to reach agreement on language.

Thanks,

Jeff




Jeffrey M. Theodore
**B R A U N** H A G E Y **& B O R D E N** LLP
Direct:  (415) 599-0219

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>

**Sent:** Wednesday, April 7, 2021 12:46 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan
<SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v Treaty Oak et al - Stipulated Injunction

Jeff,

We appreciate the efforts towards moving this matter to a resolution.  We have had a chance to
discuss with our clients and they are willing to enter into the attached stipulated preliminary
injunction order.

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Monday, March 29, 2021 7:56 PM
**To:** Kornfield, Susan <SKornfield@BODMANLAW.COM>; Bagdady, Justin
<JBagdady@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>
**Subject:** Waterloo v Treaty Oak et al - Stipulated Injunction

Susan,

We have had a chance to discuss your revised draft stipulated injunction with our client.

Unfortunately, your document is not consistent with the representations that were made by Mr.
Bagdady in response to our filing suit and on the basis of which we refrained from seeking injunctive
relief. Mr. Bagdady represented on February 19, 2021, that Treaty Oak would not manufacture any
alcoholic seltzer product until this matter is resolved, as memorialized in my email of the same day.
By contrast, your injunction promises only to refrain from selling a "WATERLOO NO. 9 GIN SPRITZ"
(which term is undefined) in the exact packaging identified in our Complaint and demand letters.
This does not provide Waterloo meaningful protection against another attempt to misappropriate its
brand and goodwill and allows your client to market an only slightly revised infringing product
without notice.

This bait and switch is not confidence inducing and only underscores the need for preliminary
injunctive relief. Nonetheless, in an effort to avoid burdening the Court with briefing while ensuring

that there is no further infringement, we have attached a revised stipulated preliminary injunction that requires Treaty Oak to provide 120 days' notice before it proceeds with any alcoholic seltzer product that uses the Waterloo name during the pendency of this litigation. Given your representations that neither Defendant has any such present plan, this should not impinge on any rights you may claim to have while providing Waterloo confidence that it will not be sandbagged by an infringing product without an opportunity to seek emergency relief. Our revised draft also removes the inaccurate and tendentious narrative that you inserted.

Let us know if your client has any objections to this relief.

Regards,

Jeff

Jeffrey M. Theodore
**B R A U N** H A G E Y **& B O R D E N** L L P
Direct:  (415) 599-0219

**San Francisco (Main Office)**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**
7 Times Square
27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

---

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# EXHIBIT 18

| | |
|---|---|
| **From:** | Jeffrey Theodore |
| **To:** | Bagdady, Justin; Kornfield, Susan |
| **Cc:** | Noah Hagey; Schneider, Heather; Ryan Botkin |
| **Subject:** | Waterloo v. Treaty Oak |
| **Date:** | Thursday, April 22, 2021 9:03:00 AM |

Justin and Susan,

I write to follow up on our efforts to negotiate a stipulated preliminary injunction. We sent you our latest draft ten days ago, spoke on the phone about it the day after that, and have sent you three follow up emails since then but have not received any substantive response other than that you are considering our proposal. We request that you respond to our proposal today so that we can reach an agreement, if there is one to be reached, no later than Tuesday.

We have assiduously and patiently attempted to work with you her to avoid the need for motion practice, but at this point we need to either come to an agreement or let the Court resolve the matter. We appreciate your clients' prompt attention to and focus on this so that we can conclude our negotiations by Tuesday.

Regards,

Jeff


Jeffrey M. Theodore

**B R A U N H A G E Y & B O R D E N** LLP
Direct:  (415) 599-0219

**San Francisco (Main Office)**

351 California Street, 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**

7 Times Square
27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

# EXHIBIT 19

| | |
|---|---|
| **From:** | Bagdady, Justin |
| **To:** | Jeffrey Theodore; Kornfield, Susan |
| **Cc:** | Noah Hagey; Schneider, Heather; Ryan Botkin |
| **Subject:** | RE: Waterloo v. Treaty Oak |
| **Date:** | Friday, April 23, 2021 10:43:47 AM |
| **Attachments:** | Waterloo v Treaty Oak et al - Stipulated Injunction 4.23.21.docx |

**\*\*\* EXTERNAL MESSAGE \*\*\***

Jeff,

Attached is a copy of the injunction order that our client is prepared to agree to.  As you will see, this version does not include the 90-day notice provision that was in the version you last circulated.  Our client management team is still considering that concept and may be willing to agree to something like that, but given that it is outside the scope of what is at issue in the case and in our view is not something that Judge Pitman is likely to ever award even if your client filed a motion and won it, they are still weighing whether to agree to something like that.  As discussed on our last call, it would be more palatable to our client if it applied mutually.  Susan and I are setting up another call with our client team for next week to discuss the notice concept with them again.  In the meantime, as noted above I can tell you that our clients are willing to stipulate to entry of the attached order.

Justin


**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Thursday, April 22, 2021 12:04 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** Waterloo v. Treaty Oak

Justin and Susan,

I write to follow up on our efforts to negotiate a stipulated preliminary injunction. We sent you our latest draft ten days ago, spoke on the phone about it the day after that, and have sent you three follow up emails since then but have not received any substantive response other than that you are considering our proposal. We request that you respond to our proposal today so that we can reach an agreement, if there is one to be reached, no later than Tuesday.

We have assiduously and patiently attempted to work with you her to avoid the need for motion practice, but at this point we need to either come to an agreement or let the Court resolve the matter. We appreciate your clients' prompt attention to and focus on this so that we can conclude our negotiations by Tuesday.

Regards,

Jeff


Jeffrey M. Theodore

**B R A U N H A G E Y & B O R D E N** L L P

Direct:  (415) 599-0219

**San Francisco (Main Office)**

351 California Street, 10th Floor

San Francisco, CA 94104

Tel. & Fax: (415) 599-0210

**New York**

7 Times Square

27th Floor

New York, NY 10036-6524

Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| WATERLOO SPARKLING WATER CORP., | § § § | Civil Action No. 1:21-CV-161-RP |
| Plaintiff, | § § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| TREATY OAK BREWING AND DISTILLING CO., LLC, TREATY OAK BRANDS, LLC, TREATY OAK OPERATIONS, LLC, TREATY OAK HOLDINGS, LLC, SPIRITED COCKTAILS CORPORATION, DANIEL BARNES, and BRANDON CASON, | § § § § § § § § § | |
| Defendants. | § § | |

## <u>JOINT AGREED PRELIMINARY INJUNCTION ORDER</u>

Plaintiff Waterloo Sparkling Water Corp. ("Plaintiff") and Defendants Treaty Oak Brewing and Distilling Co., LLC, Treaty Oak Brands, LLC, Treaty Oak Operations, LLC, Treaty Oak Holdings, LLC (collectively, "Treaty Oak") appearing through and represented by undersigned counsel, hereby stipulate to the following Joint [Proposed] Preliminary Injunction Order:

**WHEREAS**, on February 17, 2021 Plaintiff filed this action for trademark infringement, false designation of origin, trade dress infringement, unfair competition, declaratory relief, and unjust enrichment under federal and state law (the "Action").

**WHEREAS,** Plaintiff is the owner of the federally registered mark WATERLOO

SPARKLING WATER and Design  (U.S. Reg. No. 5356607) for "sparkling water" and claims common law trademark rights in the term WATERLOO.  Plaintiff has used the

following trade dress in connection with the sale of its products, as illustrated below ("Waterloo Sparkling Water Trade Dress"):



**WHEREAS**, Defendant Treaty Oak Brewing and Distilling, LLC is the owner of a federally registered mark WATERLOO NO. 9 GIN (U.S. Reg. No. 6,003,279) for "spirits" and claims common law rights in the term WATERLOO and in design elements used on its product labels and packaging.

**WHEREAS**, Plaintiff contends that the Defendants to this Action (together, "Defendants" or, individually, each a "Defendant") developed, marketed, promoted, and sought to launch a ready-to-drink "gin spritz" product in a can under the name WATERLOO NO. 9 GIN SPRITZ using the packaging below (the "Gin Spritz Proposed Packaging"):

  

**WHEREAS**, the parties dispute certain facts regarding the development and marketing of the proposed WATERLOO NO. 9 GIN SPRITZ product using the "Gin Spritz Proposed Packaging" and Treaty Oak denies any and all liability.

**WHEREAS,** Plaintiff notified Defendants of its intention to seek a formal preliminary injunction to enjoin production, sale, or marketing of the gin spritz product in the "Gin Spritz

Proposed Packaging" and any beverage product that Plaintiff contends infringes its trademark or trade dress rights.

**WHEREAS**, Treaty Oak represented that it would immediately halt, cease and desist any promotion, marketing, sale or distribution of the gin spritz product in the "Gin Spritz Proposed Packaging". Treaty Oak also represented to Plaintiff that there had been no sales of the gin spritz product in the "Gin Spritz Proposed Packaging" and that they agreed not to do so in the future.

**WHEREAS**, this Court has authority to issue this agreed preliminary injunction pursuant to Fed. R. Civ. P. 65 and The U.S. Trademark Act, 15 U.S.C. §§ 1051, 1125(a).

**NOW THEREFORE**, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1.      Treaty Oak agrees that it and its officers, directors, employees, agents, subsidiaries, and affiliates are restrained and enjoined during the pendency of this action from directly or indirectly marketing, promoting, selling, offering, distributing, manufacturing, purchasing, importing, advertising, or otherwise republishing the "Gin Spritz Proposed Packaging" or any packaging that is confusingly similar to the Waterloo Sparkling Water Trade Dress.

2.      Treaty Oak agrees that it will confirm to Plaintiff that it has removed all promotions, marketing and/or advertisements for the WATERLOO NO. 9 gin spritz product using the "Gin Spritz Proposed Packaging" from any and all websites, promotional decks, advertisements, stores, events, and other advertising locations within their direct or indirect control and shall refrain from such advertising during the pendency of this lawsuit.

3.      Within five (5) business days following the entry of this Order, Treaty Oak shall serve notice on Plaintiff certifying Treaty Oak's compliance with all terms of the Order.

4.      This Preliminary Injunction shall remain in force and effect through and until a final judgment in this litigation, or upon good cause by the Court upon properly noticed motion by an interested party hereto.

5.      The Court shall retain jurisdiction during the pendency of this litigation over the subject matter and the parties to enforce the terms of this Preliminary Injunction.

**IT IS SO ORDERED.**

Dated: _____                    _____
                                                                        The Honorable Robert Pitman
                                                                        United States District Judge

**SO STIPULATED AND AGREED.**

**WATERLOO SPARKLING WATER CORP.**

_____       _____
Signature                                                                          Date

Name: _____

Title:  _____

**TREATY OAK BREWING AND DISTILLING CO., LLC**

_____       _____
Signature                                                                          Date

Name: _____

Title:  _____

**TREATY OAK BRANDS, LLC**

_____       _____
Signature                                                                          Date

Name: _____

Title:  _____

**TREATY OAK OPERATIONS, LLC**

_____       _____
Signature                                                                          Date

Name: _____

Title:  _____

**TREATY OAK HOLDINGS, LLC**

_____        _____
Signature                                                                         Date

Name:   _____

Title:    _____

# EXHIBIT 20

| | |
|---|---|
| **From:** | Jeffrey Theodore |
| **To:** | Bagdady, Justin; Kornfield, Susan |
| **Cc:** | Noah Hagey; Schneider, Heather; Ryan Botkin |
| **Subject:** | RE: Waterloo v. Treaty Oak |
| **Date:** | Sunday, April 25, 2021 12:59:00 PM |

Justin,

I am happy to speak with you on Monday (and have tried you several times over the past week and a half). As I stated on the phone and in my prior emails, Waterloo will not agree to any injunctive restraint, and there is no basis for Treaty Oak to make any such request because Waterloo has not attempted to infringe or exploit Treaty Oak's trademark and trade dress. Please let us know whether Treaty Oak and Barnes will agree to the 90-day notice provision.

Thanks,

Jeff

Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N LLP
Direct: (415) 599-0219

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Friday, April 23, 2021 10:44 AM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v. Treaty Oak

*** EXTERNAL MESSAGE ***

Jeff,

Attached is a copy of the injunction order that our client is prepared to agree to.  As you will see, this version does not include the 90-day notice provision that was in the version you last circulated.  Our client management team is still considering that concept and may be willing to agree to something like that, but given that it is outside the scope of what is at issue in the case and in our view is not something that Judge Pitman is likely to ever award even if your client filed a motion and won it, they are still weighing whether to agree to something like that.  As discussed on our last call, it would be more palatable to our client if it applied mutually. Susan and I are setting up another call with our client team for next week to discuss the notice concept with them again.  In the meantime, as noted above I can tell you that our clients are willing to stipulate to entry of the attached order.

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Thursday, April 22, 2021 12:04 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** Waterloo v. Treaty Oak

Justin and Susan,

I write to follow up on our efforts to negotiate a stipulated preliminary injunction. We sent you our latest draft ten days ago, spoke on the phone about it the day after that, and have sent you three follow up emails since then but have not received any substantive response other than that you are considering our proposal. We request that you respond to our proposal today so that we can reach an agreement, if there is one to be reached, no later than Tuesday.

We have assiduously and patiently attempted to work with you her to avoid the need for motion practice, but at this point we need to either come to an agreement or let the Court resolve the matter. We appreciate your clients' prompt attention to and focus on this so that we can conclude our negotiations by Tuesday.

Regards,

Jeff

Jeffrey M. Theodore
**B R A U N H A G E Y & B O R D E N** LLP
Direct:  (415) 599-0219

**San Francisco (Main Office)**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**

7 Times Square
27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

# EXHIBIT 21

| | |
|---|---|
| **From:** | Bagdady, Justin |
| **To:** | Jeffrey Theodore; Kornfield, Susan |
| **Cc:** | Noah Hagey; Schneider, Heather; Ryan Botkin |
| **Subject:** | RE: Waterloo v. Treaty Oak |
| **Date:** | Friday, April 30, 2021 8:32:13 AM |
| **Attachments:** | Stipulated Permanent Injunction and Order of Dismissal 4.30.docx |

**\*\*\* EXTERNAL MESSAGE \*\*\***

Jeff,

We have discussed further with our client the notice provision your client has asked for in the proposed stipulated injunction.  Our client is willing to stipulate and agree to the attached permanent injunction order, which does include a 90-day notice provision over a six month period.  This would be a permanent injunction that would include dismissal of all claims in the case.  We do not believe your client is entitled to any sort of advance notice provision, but our client is willing to stipulate to entry of the attached for purposes of putting this matter to an end.

Alternatively, our client is still willing to enter into the stipulated preliminary injunction order in the form that I sent to you by email last Friday (as an attachment to my below email).

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM


ATTORNEYS & COUNSELORS

---

**From:** Bagdady, Justin
**Sent:** Friday, April 23, 2021 1:43 PM
**To:** 'Jeffrey Theodore' <Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v. Treaty Oak

Jeff,

Attached is a copy of the injunction order that our client is prepared to agree to.  As you will see, this version does not include the 90-day notice provision that was in the version you last circulated.  Our client management team is still considering that concept and may be willing to agree to something like that, but given that it is outside the scope of what is at issue in the case and in our view is not something that Judge Pitman is likely to ever award even if your client filed a motion and won it, they are still weighing whether to agree to something like that.  As discussed on our last call, it would be more palatable to our client if it applied mutually. Susan and I are setting up another call with our client team for next week to discuss the notice

concept with them again.  In the meantime, as noted above I can tell you that our clients are willing to stipulate to entry of the attached order.

Justin


**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Thursday, April 22, 2021 12:04 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** Waterloo v. Treaty Oak

Justin and Susan,

I write to follow up on our efforts to negotiate a stipulated preliminary injunction. We sent you our latest draft ten days ago, spoke on the phone about it the day after that, and have sent you three follow up emails since then but have not received any substantive response other than that you are considering our proposal. We request that you respond to our proposal today so that we can reach an agreement, if there is one to be reached, no later than Tuesday.

We have assiduously and patiently attempted to work with you her to avoid the need for motion practice, but at this point we need to either come to an agreement or let the Court resolve the matter. We appreciate your clients' prompt attention to and focus on this so that we can conclude our negotiations by Tuesday.

Regards,

Jeff


Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N  L L P
Direct:  (415) 599-0219

**San Francisco (Main Office)**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**

7 Times Square

27th Floor

New York, NY 10036-6524

Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| WATERLOO SPARKLING WATER CORP., | § § § | Civil Action No. 1:21-CV-161-RP |
| Plaintiff, | § § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| TREATY OAK BREWING AND DISTILLING CO., LLC, TREATY OAK BRANDS, LLC, TREATY OAK OPERATIONS, LLC, TREATY OAK HOLDINGS, LLC, SPIRITED COCKTAILS CORPORATION, DANIEL BARNES, and BRANDON CASON, | § § § § § § § § § | |
| Defendants. | § § § | |

## STIPULATED PERMANENT INJUNCTION ORDER AND ORDER OF DISMISSAL WITH PREJUDICE

Plaintiff Waterloo Sparkling Water Corp. ("Plaintiff") and Defendants Treaty Oak Brewing and Distilling Co., LLC, Treaty Oak Brands, LLC, Treaty Oak Operations, LLC, Treaty Oak Holdings, LLC (collectively, "Treaty Oak") appearing through and represented by undersigned counsel, hereby stipulate to the following Stipulated [Proposed] Permanent Injunction Order:

**WHEREAS**, on February 17, 2021 Plaintiff filed this action for trademark infringement, false designation of origin, trade dress infringement, unfair competition, declaratory relief, and unjust enrichment under federal and state law (the "Action").

**WHEREAS,** Plaintiff is the owner of the federally registered mark WATERLOO  SPARKLING WATER and Design (U.S. Reg. No. 5356607) for "sparkling water" and claims common law trademark rights in the term WATERLOO. Plaintiff has used the

following trade dress in connection with the sale of its products, as illustrated below ("Waterloo Sparkling Water Trade Dress"):



**WHEREAS**, Defendant Treaty Oak Brewing and Distilling, LLC is the owner of a federally registered mark WATERLOO NO. 9 GIN (U.S. Reg. No. 6,003,279) for "spirits" and claims common law rights in the term WATERLOO and in design elements used on its product labels and packaging.

**WHEREAS**, Plaintiff contends that the Defendants to this Action (together, "Defendants" or, individually, each a "Defendant") developed, marketed, promoted, and sought to launch a ready-to-drink "gin spritz" product in a can under the name WATERLOO NO. 9 GIN SPRITZ using the packaging below (the "Gin Spritz Proposed Packaging"):



**WHEREAS**, the parties dispute certain facts regarding the development and marketing of the proposed WATERLOO NO. 9 GIN SPRITZ product using the "Gin Spritz Proposed Packaging" and Treaty Oak denies any and all liability.

**WHEREAS,** Plaintiff notified Defendants of its intention to seek a formal preliminary injunction to enjoin production, sale, or marketing of the gin spritz product in the "Gin Spritz

Proposed Packaging" and any beverage product that Plaintiff contends infringes its trademark or trade dress rights.

**WHEREAS**, Treaty Oak represented that it would immediately halt, cease and desist any promotion, marketing, sale or distribution of the gin spritz product in the "Gin Spritz Proposed Packaging". Treaty Oak also represented to Plaintiff that there had been no sales of the gin spritz product in the "Gin Spritz Proposed Packaging" and that they agreed not to do so in the future.

**WHEREAS**, this Court has authority to issue this agreed permanent injunction and dismissal with prejudice pursuant to Fed. R. Civ. P. 41 and The U.S. Trademark Act, 15 U.S.C. §§ 1051, 1125(a).

**NOW THEREFORE**, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1.      Treaty Oak agrees that it and its officers, directors, employees, agents, subsidiaries, and affiliates are restrained and enjoined from directly or indirectly marketing, promoting, selling, offering, distributing, manufacturing, purchasing, importing, advertising, or otherwise republishing the "Gin Spritz Proposed Packaging" or any packaging that is confusingly similar to the Waterloo Sparkling Water Trade Dress. In the event Treaty Oak or any of its subsidiaries, or licensees of the WATERLOO NO. 9 GIN trademark decides, within six months of the date of entry of this Order, to manufacture, market, promote, sell, or otherwise launch a canned ready-to-drink alcoholic beverage product bearing the term "WATERLOO" as part of the primary product name on the front of its label, it shall provide ninety (90) days written notice to Plaintiff in advance of any such product manufacture, marketing, promotion, sale, or launch. Provided that Treaty Oak does not use the "Gin Spritz Proposed Packaging" or any packaging that is confusingly similar to the Waterloo Sparkling Water Trade Dress, nothing in this Order gives Plaintiff the legal right to approve or reject any such ready-to-drink alcoholic beverage product of Treaty Oak.

2.     Treaty Oak agrees that it will confirm to Plaintiff that it has removed all promotions, marketing and/or advertisements for the WATERLOO NO. 9 gin spritz product using the "Gin Spritz Proposed Packaging" from any and all websites, promotional decks, advertisements, stores, events, and other advertising locations within their direct or indirect control and shall refrain from such advertising.

3.     Within five (5) business days following the entry of this Order, Treaty Oak shall serve notice on Plaintiff certifying Treaty Oak's compliance with all terms of the Order.

4.     Nothing herein shall constitute or be construed as an admission of liability by Treaty Oak.

5.     The complaint and all of plaintiff's claims asserted therein are hereby dismissed with prejudice.  The Court shall retain jurisdiction over the subject matter and the parties with respect to any application to enforce the terms of this Permanent Injunction.

**IT IS SO ORDERED.**

Dated:  _____                    _____
                                                                    The Honorable Robert Pitman
                                                                    United States District Judge

**SO STIPULATED AND AGREED.**

**WATERLOO SPARKLING WATER CORP.**

_____          _____
Signature                                                                      Date

Name: _____

Title:   _____

**TREATY OAK BREWING AND DISTILLING CO., LLC**

_____          _____
Signature                                                                      Date

Name: _____

Title:   _____

**TREATY OAK BRANDS, LLC**

_____          _____
Signature                                                                      Date

Name: _____

Title:   _____

**TREATY OAK OPERATIONS, LLC**

_____          _____
Signature                                                                      Date

Name: _____

Title:   _____

**TREATY OAK HOLDINGS, LLC**

_____          _____
Signature                                                                          Date

Name:   _____

Title:    _____

# EXHIBIT 22

| | |
|---|---|
| **From:** | Jeffrey Theodore |
| **To:** | Bagdady, Justin; Kornfield, Susan |
| **Cc:** | Noah Hagey; Schneider, Heather; Ryan Botkin; Pete Kennedy |
| **Subject:** | RE: Waterloo v. Treaty Oak |
| **Date:** | Friday, April 30, 2021 9:29:00 AM |

Justin,

You will not be surprised to hear that we are not willing to agree dismissal and permanent release of all of our claims in return for six months of a notice period that leaves Treaty Oak unfettered thereafter. Our proposal was for a preliminary injunction that would operate pending a resolution of our claims on the merits, and we crafted a fair compromise on that score that we thought would avoid preliminary injunction briefing. That was not in return for a full dismissal, nor would such an exchange be symmetrical. When you and I spoke last week, we also discussed some conceptual thoughts around a larger resolution that might be able resolve the case entirely and you said that you would discuss with your client and get back to me on those. I don't know if you spoke to your client about them, but we are still open to those discussions even as we move into the next phase of the case.

In terms of next steps, please let me know whether Treaty Oak and Barnes will agree to an expansion of the page limit on our preliminary injunction motion to 25 pages. If not, please let me know what times today you and Pete are available to meet and confer by telephone on this issue as required by the Local Rules.

Thanks,

Jeff

Jeffrey M. Theodore
**BRAUNHAGEY & BORDEN** LLP
Direct: (415) 599-0219

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Friday, April 30, 2021 8:32 AM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan
<SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v. Treaty Oak

**\*\*\* EXTERNAL MESSAGE \*\*\***

Jeff,

We have discussed further with our client the notice provision your client has asked for in the proposed stipulated injunction.  Our client is willing to stipulate and agree to the attached permanent injunction order, which does include a 90-day notice provision over a six month period.  This would be a permanent injunction that would include dismissal of all claims in the case.  We do not believe your client is entitled to any sort of advance notice provision, but our client is willing to stipulate to entry of the attached for purposes of putting this matter to an end.

Alternatively, our client is still willing to enter into the stipulated preliminary injunction order in the form that I sent to you by email last Friday (as an attachment to my below email).

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



ATTORNEYS & COUNSELORS

---

**From:** Bagdady, Justin
**Sent:** Friday, April 23, 2021 1:43 PM
**To:** 'Jeffrey Theodore' <Theodore@braunhagey.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v. Treaty Oak

Jeff,

Attached is a copy of the injunction order that our client is prepared to agree to.  As you will see, this version does not include the 90-day notice provision that was in the version you last circulated.  Our client management team is still considering that concept and may be willing to agree to something like that, but given that it is outside the scope of what is at issue in the case and in our view is not something that Judge Pitman is likely to ever award even if your client filed a motion and won it, they are still weighing whether to agree to something like that.  As discussed on our last call, it would be more palatable to our client if it applied mutually. Susan and I are setting up another call with our client team for next week to discuss the notice concept with them again.  In the meantime, as noted above I can tell you that our clients are willing to stipulate to entry of the attached order.

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Thursday, April 22, 2021 12:04 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** Waterloo v. Treaty Oak

Justin and Susan,

I write to follow up on our efforts to negotiate a stipulated preliminary injunction. We sent you our latest draft ten days ago, spoke on the phone about it the day after that, and have sent you three follow up emails since then but have not received any substantive response other than that you are considering our proposal. We request that you respond to our proposal today so that we can reach an agreement, if there is one to be reached, no later than Tuesday.

We have assiduously and patiently attempted to work with you her to avoid the need for motion practice, but at this point we need to either come to an agreement or let the Court resolve the matter. We appreciate your clients' prompt attention to and focus on this so that we can conclude our negotiations by Tuesday.

Regards,

Jeff

Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N LLP
Direct:  (415) 599-0219

**San Francisco (Main Office)**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**
7 Times Square
27th Floor
New York, NY 10036-6524

Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

# EXHIBIT 23

| | |
|---|---|
| **From:** | Bagdady, Justin |
| **To:** | Pete Kennedy; Jeffrey Theodore; Kornfield, Susan |
| **Cc:** | Noah Hagey; Schneider, Heather; Ryan Botkin |
| **Subject:** | RE: Waterloo v. Treaty Oak |
| **Date:** | Friday, April 30, 2021 3:13:02 PM |
| **Attachments:** | image001.png |

**\*\*\* EXTERNAL MESSAGE \*\*\***

The briefing timing and page limits are ok for Treaty Oak.  I think it would make sense to line up all the timing, so if WSW agrees to Pete's proposal on the answer date I'd ask for the same.  But also not a condition on our agreement to the briefing terms.

---

**From:** Pete Kennedy <PKennedy@gdhm.com>
**Sent:** Friday, April 30, 2021 5:46 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Bagdady, Justin <JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v. Treaty Oak

Jeff – That works for Daniel.  This request isn't a condition on his agreement to the terms below, but will WSW agree to extend Daniel's time to file an answer to the Complaint to 7 days after the PI is filed?  That gives us a bit of breathing room to prepare the answer in light of the PI, which could avoid the need to seek amendment later, while still giving WSW notice of his answer before the PI application response is filed.  – Pete.

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Friday, April 30, 2021 3:33 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Pete Kennedy <PKennedy@gdhm.com>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v. Treaty Oak

Justin and Pete,

Thanks very much. Based on your emails, I would propose the following full schedule and page limits as an agreed approach:

1. Motion (25 pages)
2. 14 days to file Opposition  (25 pages)
3. 7 days to file Reply (15 pages)

Let me know if that works.

Thanks,

Jeff


Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N LLP
Direct: (415) 599-0219

---

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Friday, April 30, 2021 12:57 PM
**To:** Pete Kennedy <PKennedy@gdhm.com>; Jeffrey Theodore <Theodore@braunhagey.com>;
Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v. Treaty Oak


**\*\*\* EXTERNAL MESSAGE \*\*\***

Treaty Oak would agree to the same arrangement set forth in Pete's email.

---

**From:** Pete Kennedy <PKennedy@gdhm.com>
**Sent:** Friday, April 30, 2021 3:43 PM
**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Bagdady, Justin
<JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v. Treaty Oak

Jeff – Thanks for reaching out and the head's up.  Daniel does not object to WSW's request to
expand its page limit to 25 pages, if WSW will agree to an equivalent extension for his response, and
that Daniel have 14 calendar days from the date of WSW's filing of the application to file his
response.  – Pete.


**Peter D. Kennedy** | Shareholder
Direct: (512) 480-5764 | Cell:  (512) 964-1856



401 Congress Avenue, Suite 2700
Austin, Texas 78701
www.gdhm.com

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Friday, April 30, 2021 11:30 AM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Kornfield, Susan
<SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>; Pete Kennedy <PKennedy@gdhm.com>
**Subject:** RE: Waterloo v. Treaty Oak

Justin,

You will not be surprised to hear that we are not willing to agree dismissal and permanent release of
all of our claims in return for six months of a notice period that leaves Treaty Oak unfettered
thereafter. Our proposal was for a preliminary injunction that would operate pending a resolution of
our claims on the merits, and we crafted a fair compromise on that score that we thought would
avoid preliminary injunction briefing. That was not in return for a full dismissal, nor would such an
exchange be symmetrical. When you and I spoke last week, we also discussed some conceptual
thoughts around a larger resolution that might be able resolve the case entirely and you said that
you would discuss with your client and get back to me on those. I don't know if you spoke to your
client about them, but we are still open to those discussions even as we move into the next phase of
the case.

In terms of next steps, please let me know whether Treaty Oak and Barnes will agree to an
expansion of the page limit on our preliminary injunction motion to 25 pages. If not, please let me
know what times today you and Pete are available to meet and confer by telephone on this issue as
required by the Local Rules.

Thanks,

Jeff

Jeffrey M. Theodore
**B R A U N**HAGEY **& B O R D E N** LLP
Direct: (415) 599-0219

**From:** Bagdady, Justin <JBagdady@BODMANLAW.COM>
**Sent:** Friday, April 30, 2021 8:32 AM

**To:** Jeffrey Theodore <Theodore@braunhagey.com>; Kornfield, Susan
<SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v. Treaty Oak


**\*\*\* EXTERNAL MESSAGE \*\*\***

Jeff,

We have discussed further with our client the notice provision your client has asked for in the
proposed stipulated injunction.  Our client is willing to stipulate and agree to the attached
permanent injunction order, which does include a 90-day notice provision over a six month
period.  This would be a permanent injunction that would include dismissal of all claims in the
case.  We do not believe your client is entitled to any sort of advance notice provision, but our
client is willing to stipulate to entry of the attached for purposes of putting this matter to an
end.

Alternatively, our client is still willing to enter into the stipulated preliminary injunction order
in the form that I sent to you by email last Friday (as an attachment to my below email).

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM


ATTORNEYS & COUNSELORS

---

**From:** Bagdady, Justin
**Sent:** Friday, April 23, 2021 1:43 PM
**To:** 'Jeffrey Theodore' <Theodore@braunhagey.com>; Kornfield, Susan
<SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan
Botkin <ryan@wittliffcutter.com>
**Subject:** RE: Waterloo v. Treaty Oak

Jeff,

Attached is a copy of the injunction order that our client is prepared to agree to.  As you will
see, this version does not include the 90-day notice provision that was in the version you last
circulated.  Our client management team is still considering that concept and may be willing to
agree to something like that, but given that it is outside the scope of what is at issue in the case
and in our view is not something that Judge Pitman is likely to ever award even if your client
filed a motion and won it, they are still weighing whether to agree to something like that.  As
discussed on our last call, it would be more palatable to our client if it applied mutually.

Susan and I are setting up another call with our client team for next week to discuss the notice concept with them again.  In the meantime, as noted above I can tell you that our clients are willing to stipulate to entry of the attached order.

Justin

**Justin P. Bagdady**
734-930-2727
JBagdady@BODMANLAW.COM



ATTORNEYS & COUNSELORS

---

**From:** Jeffrey Theodore <Theodore@braunhagey.com>
**Sent:** Thursday, April 22, 2021 12:04 PM
**To:** Bagdady, Justin <JBagdady@BODMANLAW.COM>; Kornfield, Susan <SKornfield@BODMANLAW.COM>
**Cc:** Noah Hagey <hagey@braunhagey.com>; Schneider, Heather <HSchneider@willkie.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** Waterloo v. Treaty Oak

Justin and Susan,

I write to follow up on our efforts to negotiate a stipulated preliminary injunction. We sent you our latest draft ten days ago, spoke on the phone about it the day after that, and have sent you three follow up emails since then but have not received any substantive response other than that you are considering our proposal. We request that you respond to our proposal today so that we can reach an agreement, if there is one to be reached, no later than Tuesday.

We have assiduously and patiently attempted to work with you her to avoid the need for motion practice, but at this point we need to either come to an agreement or let the Court resolve the matter. We appreciate your clients' prompt attention to and focus on this so that we can conclude our negotiations by Tuesday.

Regards,

Jeff

Jeffrey M. Theodore
B R A U N H A G E Y & B O R D E N LLP
Direct:  (415) 599-0219

**San Francisco (Main Office)**
351 California Street, 10th Floor
San Francisco, CA 94104

Tel. & Fax: (415) 599-0210

**New York**
7 Times Square
27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

# EXHIBIT 24





- 4 pack offering in standard 12 oz cans
- Target retail $9.99
- Gin source - Waterloo Gin, Austin TX
- 5% ABV
- 99 calories. 0 Sugar. 0 carbs. 0 sodium. Gluten Free
- April 2021 launch



**WATERLOO No.9 Gin Spritz** is an innovative ready to drink canned cocktail made in an artisanal craft distillery in the hill country of Austin, Texas. Available in three delightful flavors, WATERLOO No.9 Gin Spritz invites you to create your own unique cocktail experience designed for moments worth savoring.



| Program | April - June | July - September | October - December |
|---|---|---|---|
| **National Theme** | Delightful Cocktail Experiences | Delightful Summer Experience | Delightful Holiday Experience |
| **Incentive Ideas** | • VIP trip with friends to Austin, Texas<br>• Waterloo Gin Experience at Treaty Oak<br>• Private picnic in the Austin Hill country<br>• Longaberger Picnic Basket<br>• Waterloo Cocktail Kit | • Longaberger Picnic Basket<br>• Picnic Time Bar wear set<br>• Waterloo Cocktail Kit<br>• Mixology experiences<br>• Food & Wine Event Flyaway<br>• Private VIP Picnic with 10 friends | • Austin Food & Wine Event Flyaway<br>• Mixology experiences<br>• WATERLOO Holiday themed Cocktail kits |
| **Tie In Partners** | Cookware, Culinary Events, Art Events, Longaberger, Picnic Time | Culinary, Art, Culture, Outdoor Events, Made In Cookware (Austin Based), Longaberger, Picnic Time | Austin Food & Wine |
| **Supported by** | POS<br>Sales Incentives<br>Social Media<br>Digital Ads<br>Influencers<br>Targeted Media buys<br>Events and Demos | POS<br>Sales Incentives<br>Social Media<br>Digital Ads<br>Influencers<br>Targeted Media buys<br>Events and Demos | POS<br>Sales Incentives<br>Social Media<br>Digital Ads<br>Influencers<br>Targeted Media buys<br>Events and Demos |
| **POS** | Evergreen POS suite with sweeps specific signage | Evergreen POS suite with sweeps specific signage | Evergreen POS suite with sweeps specific signage |
| **Social Media** | Introduce WATERLOO Gin Spritz. Ingredients, Botanicals, Distillation Techniques, Brand History, Founder stories, Sustainability around Earth Day | Culinary, food pairings, picnics, Music/Art/Cultural events near the water | Mixology and holiday, Austin Food & Wine partnership elements, bartender and mixology content |

# 2021 CALENDAR



WATERLOO No.9 GIN SPRITZ

Overview:

**WELCOME TO THE WORLD OF *WATERLOO NO.9 GIN SPRITZ* AND IT'S DELIGHTFUL COCKTAIL EXPERIENCES. ENTER WIN AN EXPERIENCE OF A LIFETIME IN AUSTIN, TX.**

Grand Prize:

- Trip for you + 5 friends to Austin, Texas
- Flights + hotel for all
- Waterloo Spritz Tasting and 5 course dinner under the    stars in the Austin Hill    country
- Waterloo Gin Spritz Experience in Austin
- Longaberger Picnic Basket + Waterloo Spritz barware set

Supported with:

- Retail signage and POS (varied)
- Sweeps signage
- Sweepstakes management
- Social Media Promotion
- Influencer Support
- Paid Media
- Digital Ads
- Sales Blitz
- Price Promotion





WATERLOO   APR-JUNE:
**A DELIGHTFUL *COCKTAIL* EXPERIENCE**



Summer Sweepstakes
- Picnic for 4
- Picnic Time Cocktail Set
- Longaberger Limited edition
- Red White and Blue Basket
- Bar Tools Set

Supported with:
- Retail signage and POS (varied)
- Sweeps signage
- Food & Tasting Specific Experiences
- Sweepstakes management
- Social Media Promotion
- Influencer Support
- Paid Media
- Digital Ads
- Sales Blitz
- Price Promotion

Overview:

**CELEBRATE AMERICA ALL SUMMER LONG WITH AND ENTER TO WIN A DELIGHTFUL SUMMER EXPERIENCE … ARTISANAL READY TO DRINK COCKTAILS MADE WITH REAL GIN AND FRESH**





WATERLOO No.9 GIN SPRITZ    JULY-SEPT:

# A DELIGHTFUL *SUMMER* EXPERIENCE





# EXHIBIT 25

The Wayback Machine - https://web.archive.org/web/20140223191700/http://www.treatyoakdistilling.c…

*Handcrafted Spirits from* **AUSTIN TEXAS USA**

# TREATY OAK

## — DISTILLING CO. —





# FOR MORE INFORMATION, PLEASE VISIT US ON FACEBOOK >>



   

The Wayback Machine - https://web.archive.org/web/20150209134927/http://www.treatyo...

Handcrafted Spirits from AUSTIN TEXAS USA

# TREATY OAK
## DISTILLING CO.





# FOR MORE INFORMATION, PLEASE VISIT US ON FACEBOOK >>



   

The Wayback Machine - https://web.archive.org/web/20161219175325/http://www.treatyoakdistilling.com/

☰

(/WEB/20161219175325/HTTP://WWW.T...)



STILLERY TOUR

EVERY FRIDAY, SATURDAY, & SUNDAY

BOOK IT NOW ›

(https://web.archive.org/web/20161219175325/http://treatyoakdistilling.com/tour)

*Happy Holidays!*

TREATY OAK RANCH WILL BE CLOSED
DEC 19TH - JAN 5TH

* REOPENING JAN 6TH 2017 *

LOOK FORWARD TO
SEEING YOU NEXT YEAR!



(https://web.archive.org/web/20161219175325/http://treatyoakdistilling.com/pages/ranch)

# WELCOME TO THE TREATY OAK FAMILY.

Our distillery is named after a 500 year old oak tree in Austin, Texas that symbolizes the strength and vitality of our products. We are happy to present our Treaty Oak Rum, Treaty Oak Barrel Reserve, Waterloo Gin, Waterloo Antique, Graham's Texas Tea, Starlite Vodka and Red-Handed Bourbon. Our ongoing focus is to be both innovative and steadfast in our devotion to quality, hand-crafted spirits.



| GRAHAM'S TEXAS TEA | RED-HANDED BOURBON WHISKEY | STARLITE VODKA | TREATY OAK BARREL RESERVE RUM | TREATY OAK RUM | WATERLOO ANTIQUE BARREL RESERVE GIN | WATERLOO GIN |

(/web/20161210725325/http://www/.web/20161210725325/http://www
texas-tea-vodka)                handled-bourbon-whiskey)

/web/20161210725325/http://www/.web/20161210725325/http://www/.web/20161210725325/http://www/.web/20161210725325/http://www
vodka)                          oak-barrel-reserve-rum)        oak-rum)        antique-barrel-reserve-gin)          gin)



(https://web.archive.org/web/20161210725325/https://www.facebook.com/TreatyOak/)   (https://web.archive.org/web/20161210725325/https://twitter.com/TreatyOakTX)
(https://web.archive.org/web/20161210725325/https://instagram.com/treatyoaktx)

The Wayback Machine - https://web.archive.org/web/20170628183628/https://www.treatyoakdistilling.com/

# WELCOME TO THE TREATY OAK FAMILY

Our distillery is named after a 500 year old oak tree in Austin, Texas that symbolizes the strength and vitality of our products. We are happy to present our Treaty Oak Rum, Treaty Oak Barrel Reserve, Waterloo Gin, Waterloo Antique, Graham's Texas Tea, Starlite Vodka and Red-Handed Bourbon. Our ongoing focus is to be both innovative and steadfast in our devotion to quality, hand-crafted spirits.

OUR SPIRITS

**OUR BEERS**



Waterloo Antique



Waterloo Gin



Treaty Oak Rum



Treaty Oak



Starlite Vodka



Red-Handed



Graham's Texas

**OUR COCKTAIL RECIPES**



Bright Side



Lil' Hop



Fitzhugh Ale



Mint Julep



Frank Larossi live July 7th, 2017



Old Fashioned



Charlie Pierce live July 2nd, 2017

UPCOMING EVENTS



Mojito

Jacob Jaegar live July 1st, 2017



Pepperita



Three Quarter Moon live June 30th, 2017

© 2017 Treaty Oak Distilling Co / Made in Texas

# WELCOME TO THE TREATY OAK FAMILY

Our distillery is named after a 500 year old oak tree in Austin, Texas that symbolizes the strength and vitality of our products. We are happy to present our Treaty Oak Rum, Treaty Oak Barrel Reserve, Waterloo Gin, Waterloo Antique, Graham's Texas Tea, Starlite Vodka and Red-Handed Bourbon. Our ongoing focus is to be both innovative and steadfast in our devotion to quality, hand-crafted spirits.

OUR SPIRITS



Red-Handed Bourbon   Treaty Oak Barrel Reserve Rum   Treaty Oak Rum   Waterloo Gin   Waterloo Antique Gin

The Wayback Machine • https://web.archive.org/web/20180413162038/https://www.treatyoakdistilling.com/

## OUR BEERS



BLONDE ALE — Bright SIDE — Bright Side

SESSION IPA — Lil' HOP — Lil Hop

BRITISH MILD — Fitzhugh ALE — Fitzhugh Ale

TREATY OAK BREWING · BREWED IN TX · TX HILL COUNTRY

## OUR COCKTAIL RECIPES



Mint Julep

Old Fashioned

Mojito

Pepperita

## UPCOMING EVENTS



Brother Shaw's Texas Swing Revival live April 20, 2018

Bo Porter live April 15, 2018

Country Fools Gold live April 14th, 2018

Tommy Elkins live April 13, 2018



© 2017 Treaty Oak Distilling Co. / Made in Texas



The Wayback Machine - https://web.archive.org/web/20190914204727/https://www.treatyoakdistilling.com/



THE BEST WHISKIES HAVE YET TO BE MADE

Whiskey was part of the fabric of the old frontier. At Treaty Oak, we wonder about new frontiers and who's taking whiskey there. Our whiskeys are blends of the scientific method and experiential insights. We enliven stringent distilling and aging processes with meticulously selected local ingredients in custom-made stills, fueled by a passionate belief that the best spirits have yet to be created.



RED HANDED BOURBON WHISKEY

LEARN MORE

GHOST HILL TEXAS BOURBON WHISKEY

LEARN MORE

RED HANDED RYE WHISKEY

LEARN MORE

## THE SOURCES OF FLAVOR

Our whiskeys begin as pure Hill Country limestone spring water. We source organic, heirloom corn varietals from Panhandle farmers and mill them at James Brown's bespoke Barton Springs Mill. We've taught ourselves more than most distillers will ever know about the process of making whiskey, steeped ourselves in its traditions, learned our lessons. But we keep wondering—and we've learned that wondering keeps leading us to more nuanced flavors and new ways to talk about them. Treaty Oak whiskey is a distillation of all that wonder.



## FEATURED NEWS





*FORBES.COM:* MAHALO SPIRITS GROUP WELCOMES TREATY OAK DISTILLING TO ITS FAST-GROWING CRAFT SPIRITS PORTFOLIO
- January 28, 2019

The world of American whiskey is an incredibly exciting place right now. Every time I visit a distillery somewhere in the United States, I am regularly stunned…

Read More



*THEMANUAL.COM:* TREATY OAK DISTILLING'S EXPERIMENTS RUN WILD IN TEXAS
- March 4, 2019

In the foothills of Texas, a short drive outside Austin, Treaty Oak Distilling loves to play with booze on their sprawling 28-acre campus.

Read More





*TEXASHIGHWAYS.COM:* SPRING BREAK ON DISTILLERY ROW

– April 11, 2019

"It's called Dripping Springs for a reason,"....

Read More

*GEARPATROL.COM:* SOME OF AMERICA'S BEST BOURBON WHISKEY IS COMING OUT OF TEXAS – March 8, 2019

Looking for the most exciting whiskey state outside of Kentucky? Try Texas. For years, their single malts have been marked as world-class, and at the recent Texas Bourbon Shootout in Longview, Texas, world whiskey reviewer and author of the *Whiskey Bible* Jim Murray called several Texas bourbons "among the best whiskeys not just in Texas, but in the world."

Read More



*AMERICANWHISKEYMAG.COM:* TREATY OAK – FULL OF FIRSTS

– February 21, 2019

"Having a home like this helps to bring you into the fold of other distilleries," says Treaty Oak Distilling founder, Daniel Barnes. "It gives it that realness. That, and actually making good Bourbon."

Read More

SEE ALL EVENTS



*AUSTIN.EATER.COM:* AUSTIN DISTILLERS ARE USING LOCAL INGREDIENTS IN THEIR SPIRITS

– May 24, 2019

Spirit producers are turning toward molasses, lavender, juniper and more ingredients grown in Texas.

Read More

UPCOMING BANDS & EVENTS

INSTAGRAM

GO TO OUR INSTAGRAM

THE BEST GINS HAVEN'T BEEN MADE EITHER

# WATERLOO GIN

VISIT WATERLOO

Home

Whiskey

Cocktail Recipes

Our Story

The Distillery

Book A Tour

Event Calendar

Unbound Journal

Where To Buy

The Shop

Contact Us

Waterloo Gin

## NEWSLETTER SIGN UP

Sign up to receive news and updates.

Email Address

SIGN UP

We respect your privacy.

© 2017 Treaty Oak Distilling Co / Made in Texas

The Wayback Machine - https://web.archive.org/web/20200714130345/https://www.treatyoakdistilling.com/

# OLD FASHIONED IS HERE

YOUR FAVORITE TEXAS BOURBON IN A READY-TO-DRINK COCKTAIL STRAIGHT FROM THE BOTTLE.

# COVID-19 POLICIES

Treaty Oak Family - with the health and safety of our employees, patrons and community members in mind, we at Treaty Oak Distillery are taking cautious action to protect each other from from COVID-

19.

We are so grateful to our community for allowing us to stay afloat during these difficult times. When visiting our property, we ask that you thoroughly read and respect our updated policies in order to keep one another safe. As always, we appreciate your business and thank you for your support!

**VIEW GUIDELINES HERE**

**TREATY OAK HAND SANITIZER**

We are proud to help our nation in this time of crisis by offering Treaty Oak Hand Sanitizer that is formulated according to WHO guidelines. Now offering smaller sizes ranging from 2.5 oz. to 1 gallon for personal use, and bulk quantities from 48+ gallons.

**CHECK PRICING & AVAILABILITY**



UPCOMING BANDS AND EVENTS

## JULY 2020

| SU | MO | TU | WE | TH | FR | SA |
|----|----|----|----|----|----|----|
|    |    |    | 1  | 2  | 3  | 4  **8a** Independence Day  **11a** Music: Armadillo Road |
| 5  | 6  | 7  | 8  | 9  | 10 | 11 |

| SU | MO | TU | WE | TH | FR | SA |
|----|----|----|----|----|----|----|
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |



SEE THE LATEST VIDEO CONTENT FROM TREATY OAK DISTILLING

WATCH NOW

STAY CONNECTED

# NEWSLETTER SIGN UP

Sign up to receive news and updates.

Home

Whiskey

Cocktail Recipes

Our Story

Event Calendar

Where To Buy

The Shop

Contact Us

SIGN UP

We respect your privacy.

Waterloo Gin

For Trade

The Distillery

Book A Tour

© 2017 Treaty Oak Distilling Co / Made in Texas

# EXHIBIT 26

# United States of America

## United States Patent and Trademark Office

# WATERLOO NO. 9 GIN

**Reg. No. 6,003,279**

**Registered Mar. 03, 2020**

**Int. Cl.: 33**

**Trademark**

**Principal Register**

Treaty Oak Brewing and Distilling, LLC  (TEXAS LIMITED LIABILITY COMPANY)
16604 Fitzhugh Road
Dripping Springs, TEXAS 78620

CLASS 33: Spirits

FIRST USE 10-00-2011; IN COMMERCE 2-00-2012

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "GIN"

SER. NO. 87-953,095, FILED 06-07-2018



Director of the United States
Patent and Trademark Office



> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** h ttp://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# EXHIBIT 27





# *Mahalo Spirits Group* Welcomes *Treaty Oak Distilling* to Its Fast-Growing Craft Spirits Portfolio

*Full-Service Brand Innovation Company Adds An Award-Winning Suite of Whiskies & Gin as it Looks for its Next Great Partner; Hires Key Industry Players*

July 12, 2018 09:47 AM Eastern Daylight Time

DELRAY BEACH, Fla.--(BUSINESS WIRE)--*Mahalo Spirits Group* (MSG) – the full-service creative, sales, marketing and entrepreneurial powerhouse behind the success of *Angel's Envy* bourbon, *Papa's Pilar* rum and *Suerte* tequila over the past decade – today announced a new addition to its portfolio in *Treaty Oak Distilling*. Based in Dripping Springs, TX, the vanguard distillery has been at the leading-edge of the craft spirits movement for more than a decade. The partnership promises to further the explosive growth of the craft distilling industry and MSG's mission of forging partnerships with world-class managers and founders to incubate and accelerate premium authentic brands globally.

Founded in 2006 by Daniel Barnes, *Treaty Oak Distilling* is an eclectic and brilliant team of rebels committed to making the best spirits that purposefully break from convention to create something new, or even curious. Until now, the company's portfolio of spirits has been one of the best kept secrets in Texas. With MSG's help, the upstart brand will expand its U.S. footprint into seven new markets, starting with the award-winning trio of Waterloo gin expressions (Waterloo No. 9, Waterloo Antique and Waterloo Old Yaupon), and quickly rollout nationally. The whiskey portfolio, which includes Red-Handed bourbon, Red-Handed rye and Ghost Hill bourbon, will follow shortly thereafter.

Concurrently, MSG has made big investments in its business and team, to supplement its expertise in branding, marketing, strategy, finance, supply chain, compliance, and fundraising. This includes the *Drinkubator* technology group, led by Kyle Groth and Bryan Monteleone, which will focus on building spirits focused apps, tools and platforms designed to influence consumers at, or near, the point of purchase. The *Mahalo Capital Group* is in the middle of raising another fund in the range of approximately $50mm, as it actively searches for its next great partners.

Under the leadership of Chief Sales Officer Bill McGough, MSG has also added four experienced industry veterans to its national sales and marketing group, all of whom are extensively trained to sell premium craft spirits and interface with an ever-consolidating distribution industry.

- Nick Doyle, Executive Vice President & National Sales Manager
- R.B. Wilber, Vice President – Southwest U.S. Region
- Brendan O'Mahoney, Vice President – West U.S. Region
- Johnny Lazenby, Vice President – Southeast U.S. Region

Alex Bogusky, an expert who leads brand strategy and consumer insights for MSG, along with creative powerhouse Crispin Porter+Bogusky (CP+B), worked with *Treaty Oak* to refresh the look and feel of the company's primary brand elements, including its logo, point-of-sale, website and packaging. The whiskey portfolio now features paint-dipped background colors and texture with a classic design, while the trio of gins include disruptive paint strokes in blue (Waterloo No. 9), black (Waterloo Antique) and green (Waterloo Old Yaupon) over a delicate juniper stem wrapped in oak leaves.

"We're thrilled to collaborate with Daniel Barnes and his team at *Treaty Oak Distilling* to build this portfolio of innovative and authentic whiskies and gin," said Stephen Groth, President & CEO, *Mahalo Spirits Group*. "After evaluating hundreds of brands, Daniel and his team were clear standouts and a no-brainer to pursue a partnership with. We have a talented team with a proven track record of creating and building premium brands, along with the resources to take these handcrafted spirits to the next level."

"Mahalo was the best strategic and cultural fit for both our team and brands," said Daniel Barnes, Founder of *Treaty Oak Distilling*. "Beyond their industry expertise and first-rate resources, we instantly felt a genuine connection and a shared purpose."

Previously, MSG was a founder of *Angel's Envy* bourbon, taking the super-premium brand from concept to creation to eventual acquisition by *Bacardi* in 2015. Using its *Launchpad* proprietary 360 brand development process as a disciplined approach to rapidly growing emerging brands, the company has also built *Papa's Pilar* rum from an idea into a key player, which has achieved the largest percentage growth of the Top 10 ultra-premium rum category over the past 52-week reporting period (Nielsen, April 2018). Now sold in 27 states, Papa's Pilar opened a distillery and experience center last year in Key West, FL. Most recently, MSG partnered with *Suerte*, a premium 100% tahona-crushed agave tequila made in Jalisco, Mexico, to expand the brand's presence into 22 states, which helped to triple its sales volume over the past few years.

MSG is always looking for the next great partner to add to its portfolio. For more information, please contact Kyle Groth at (607) 351.9784 or kgroth@mahalospirits.com

**About Mahalo Spirits Group**

Mahalo Spirits Group is a full-service brand innovation company headquartered in Delray Beach, Florida. Mahalo specializes in incubating and/or accelerating handcrafted brands with deep and authentic stories. Mahalo has a broad array of targeted resources and expertise, ranging from a national route-to-market force to world-class creative and creation talent to a fully dedicated technology team, supported by a finance, supply chain and compliance team. Existing partnerships include Papa's Pilar Rum, Suerte Tequila and Treaty Oak Distilling.

## Contacts
Ro-Bro Marketing & PR
Aaron Brost, 312.576.5315
aaron@ro-bro.com

Case 1:21-cv-00161-RP Document 17 Filed 05/04/21 Page 207 of 215

or

Joseph Stark, 440.465.3143

joe@ro-bro.com

# EXHIBIT 28



# Ro-Bro
### Marketing & Public Relations, Inc.



# Treaty Oak Distilling Unveils Fresh New Look for its Waterloo Gin Portfolio Throughout the Great State of Texas

**Jul 5, 2018**



## Treaty Oak Distilling Unveils Fresh New Look for its Waterloo Gin Portfolio Throughout the Great State of Texas

**Dripping Springs, TX (July 2018) –** Treaty Oak Distilling, the vanguard distillery, founded by Daniel Barnes in 2006, that has been at the leading-edge of the small spirits movement for over a decade, is proud to introduce a fresh new look for its Waterloo

Gin portfolio. The trio of gins, which offer a modern take on the classic spirit, will first roll out in the brand's home state of Texas, before launching in seven new U.S. markets.

With help from creative powerhouse **Crispin Porter+Bogusky**, the new bottles showcase a sleek new shape, with disruptive paint strokes in blue (Waterloo No. 9), black (Waterloo Antique) and green (Waterloo Old Yaupon) over a delicate juniper stem wrapped in oak leaves. The trio of gins are born of both science and experience, created in custom made pot and column stills with Treaty Oak's proprietary distillation process. Comprised of distillers, sommeliers, botanists and architects, the crew draws inspiration from the past, but also the world around them. They meticulously select the best ingredients and adhere to stringent aging processes and distilling methods to ensure the highest-quality products. Each gin is distilled in Dripping Springs, using limestone-filtered Texas spring water.

"We strive to make spirits that purposefully break from convention in order to create something new, or even curious," said Daniel Barnes, founder of Treaty Oak Distilling. "We're proud to be the most awarded distillery in Texas. And while we're best known for our whiskey, our gins will make you rethink everything you thought you knew about this spirit."

Waterloo No. 9, the first gin to be introduced in the state of Texas, draws inspiration from a traditional dry gin by utilizing ingredients such as juniper, coriander, and anise. But, its perhaps best defined by its unique floral and citrus qualities, like ginger, grapefruit zest, lavender, the latter two of which are sourced from the Texas valley, thanks to a partnership with Dr. Mani Skaria, founder of U.S. Citrus, who developed a proprietary USDA certified micro-budding citrus propagation technique. The Waterloo name pays homage to the original name for the city of Austin. No. 9 refers to the ninth expression the team selected from among 100 recipes. A gin as big as Texas, No. 9 won the coveted "Gin Masters Award" in London from among more than 300 entries. It was also the primary ingredient in the "Town Lake Yacht Club" cocktail, which was named the 2018 official drink of Austin.

In a sea of clear gins, Waterloo Antique Gin stands out due to its dark color. The longest aged gin on the market, this expression is barreled on-site before aging under the Texas sun in first use American White Oak barrels for 24 months. Distilled with local botanicals and Texas spring water, it flaunts a sweet floral and vanilla nose, and then reveals dark, herbal flavor notes, presenting hints of nutmeg and leather, before a sweet-spicy cinnamon finish. Meant to be served neat and drink like a whiskey, Antique also offers an intriguing option to replace whiskey in any cocktail. 94 proof.

The newest addition to the gin portfolio is Waterloo Old Yaupon, a unique take on an Old Tom Gin, meaning an 18th century London Dry. Pale-yellow in appearance, this 90-

Case 1:21-cv-00061-RP Document 17-1 Filed 05/04/21 Page 211 of 215

proof gem features botanicals such as Yaupon Holly, Juniper, Kaffir Lime, Anise, which are then back-sweetened with Wildflower Honey.

### Availability

Waterloo No. 9 ($24.99) and Waterloo Antique Gins ($29.99) are now available in 750ml bottles at both on- and off-premise establishments in Texas. Waterloo Old Yaupon Gin ($24.99) can be found off-premise. Retail prices may vary by market. Later this year, the gins will roll out to seven additional U.S. markets, including California, Florida, Georgia, Illinois, Michigan, Tennessee and Virginia. For more information, please visit **www.waterloogin.com**

### The Distillery

Located on a 28-acre ranch at 16604 Fitzhugh Road in Dripping Springs, Texas (approximately 25 miles from Austin), Treaty Oak is open to the public Thursday and Friday from 4-9pm, Saturday from 12-9pm, and Sunday from 12-6pm. The distillery offers tours on Saturdays from 1-6pm, which provides a behind the scenes look into the distilling process and history of Treaty Oak. Admission for a 30-minute tour is $15 and includes a spirit tasting and a rotating seasonal cocktail. Reserve your spot here: **www.treatyoakdistilling.com/tours**. Walk-ins are accepted (subject to availability). For private tours, call **(512) 599-0335**. The facility also houses *Ghost Hill Restaurant*, a full kitchen and bar featuring Texas-centric food and beverage; The Cocktail Lab, where science meets the art of cocktailing; Rick House Bar, which is also available to rent for special events; a visitor center; *The Bottle Shop*, where guests can purchase brand gear and limited-edition whiskey expressions only available at the distillery; and family-friendly entertainment, including live music, yard games and a kids play area.

### About Treaty Oak Distilling

Treaty Oak Distilling is a collective of distillers, sommeliers, botanists and architects based in Dripping Springs, Texas who are in pursuit of making the best spirits. They look to film, music, cultural exchange and beyond to push and fuel a path forward. Inspired by the world around them, they have crafted an unbound lineup of spirits: Ghost Hill Texas Bourbon, Red Handed Bourbon, Red Handed Rye Whiskey, Waterloo No.9 Gin, Waterloo Antique Gin and Waterloo Old Yaupon Gin. Connect with Treaty Oak Distilling on **Facebook** and **Instagram**. Drink responsibly.

# # #

# RECENT NEWS

Barrell Craft Spirits® Awarded Eight Double Gold and Six Gold Medals at the 2021 San Francisco World Spirits Competition

Stellum Spirits Toasts the Modern Whiskey Drinker With New Line of Cask-Strength Bourbon & Rye Whiskey

Barrell Craft Spirits® Introduces Barrell Seagrass

## ARCHIVES

May 2021

March 2021

January 2021

December 2020

November 2020

October 2020

August 2020

July 2020

May 2020

April 2020

March 2020

February 2020

December 2019

October 2019

July 2019

June 2019

May 2019

April 2019

February 2019

January 2019

November 2018

October 2018

September 2018

August 2018

July 2018

June 2018

April 2018

March 2018

January 2018

November 2017

October 2017

September 2017

August 2017

July 2017

June 2017

May 2017

April 2017

March 2017

February 2017

January 2017

December 2016

November 2016

October 2016

September 2016

August 2016

July 2016

June 2016

April 2016

February 2016

January 2016

December 2015

November 2015

October 2015

September 2015

August 2015

July 2015

June 2015

May 2015

April 2015

March 2015

February 2015

January 2015

November 2014

October 2014

September 2014

August 2014

June 2014

May 2014

April 2014

March 2014

January 2014

December 2013

November 2013

October 2013

September 2013

August 2013

July 2013

June 2013

May 2013

March 2013

February 2013

January 2013

December 2012

## Interested in working with us?

T 312.576.5315

INFO@RO-BRO.COM